### WILLIAM PYNCHON *vs.* CHARLES STEARNS.

A tenant for years demised to the remainderman, to have and to hold during the term, reserving to the lessor the right to erect buildings on the demised premises, without molestation, the lessee yielding and paying a yearly rent, and engaging to keep the fences in repair and to pay all taxes; "it being understood that in case the lessor should use any part of the land for buildings and their appendages, a proportionate amount shall be deducted from the rent which the lessee is to pay." *Held*, that the term merged in the remainder, and that the lessee could not maintain an action of waste against the lessor.

In this country, no act of a tenant amounts to waste, unless it is or may be prejudicial to the inheritance, or to those who are entitled to the reversion or remainder.

A tenant does not commit waste by opening a way over meadow land, for his convenience, and digging drains by the side thereof, and carrying on earth for the purpose of making the way passable; or by erecting houses on such land, where

there were none before, and digging cellars for them, and raising the ground about them; or by carrying quantities of earth upon the low and wet parts of such land; if the occasional breaking up of such land is a judicious and suitable mode of cultivating it, and if the cost of levelling would be small, and if, after deducting such cost, the land over which the way was made, and on which the houses were built, would, in case of their removal, be equally (or more) valuable for agricultural purposes, including ploughing and laying it down to grass, as if it had not thus been changed and built upon.

THIS was an action of waste, in which the plaintiff alleged that the defendant held two parcels of land in Springfield, as tenant for life — the plaintiff having the next estate of inheritance — and had committed sundry acts of waste thereon. Trial before *Shaw*, C. J. whose report thereof was as follows:

The plaintiff gave in evidence the last will of Edward Pynchon, proved May 30th 1830, by which he devised the two parcels of land described in the plaintiff's declaration, viz. Pond Meadow and Great Meadow, to his wife, Susan Pynchon, so long as she should remain his widow, remainder to his brother, the plaintiff, in fee: Also an assignment of the same parcels, by said Susan, to the defendant, for her life, reserving a yearly rent of thirty dollars. There was evidence tending to show that these parcels of land adjoined each other, and together extended from Main Street, easterly, to and beyond Chestnut Street.

The plaintiff relied on the four following acts of waste. 1st. That the defendant had destroyed fences, or permitted them to fall down or decay, by means of which there was danger that the abuttals and landmarks of the estate would be lost, or rendered doubtful, to the damage of the inheritance. 2d. That the defendant had laid out a street, or open way, across the land, from one public highway to another, viz. from Main Street to Chestnut Street, by which the character of the land was changed, to the injury of the inheritance, and by which there was danger that the rights of the inheritance might be lost or impaired. 3. That in order to fit that part of the land, so laid out for a street, for travel, the defendant had ploughed furrows or dug drains along the side thereof, and drawn in large quantities of earth, to raise the same, and

26*

thereby had so changed the surface, that it ceased to be meadow and pasture land. 4th. That the defendant had erected several wooden houses on the land, and had, for that purpose, caused some portion of the soil to be thrown out from under the sites of those houses, in order to form cellars under them, and to raise the land around them ; and had thus changed the character and condition of the land.

As to all that part of the land, nearest to Main Street, called Pond Meadow, the defendant denied the right of the plaintiff to maintain this action, on the ground that the plaintiff, on the 13th of July 1839, had taken of the defendant a lease thereof during the life of the aforesaid Susan Pynchon, so that the defendant had ceased to be tenant for life, and the plaintiff had become tenant for life, entitled to the possession; and that the relation of tenant for life and remainderman no longer subsisted between the parties. The lease was given in evidence, [a copy of which is set forth in the next case, *post.* 313,] and the execution thereof admitted. The judge sustained the defendant's objection, and instructed the jury that, as to that part of the land, the action could not be maintained.

As to the alleged acts of waste, on the other parcel of land, the defendant made several answers : As to removal or decay of fences, and the loss of boundaries, he denied the fact; and the evidence was left to the jury, with directions not excepted to. As to the other alleged acts of waste, the defendant denied that they amounted to waste. And the jury were instructed that the opening of a way through the land, from one highway to another, was not waste. As to the subverting of the soil, and carrying on earth to raise it, and as to the plaintiff's digging out of a part of the soil for cellars of houses, and raising the soil about the houses, evidence was offered, and, though objected to, was admitted, tending to show that it was a useful and beneficial mode of husbandry, on similar meadow ground, occasionally to break it up and cultivate it, and again lay it down to grass; that as the soil in question was low and wet, the carrying of earth thereon would benefit it, and make it worth more for agricultural purposes, than if it

had not been done ; that it would cost but little to level it and fit it for cultivation. Whereupon the jury were instructed, that if breaking up meadow land, occasionally, was. a judicious and suitable mode of husbandry, the changing of the surface of the soil from meadow, by breaking up and cultivating it, was not waste ; that if the cost of levelling would be small, and if, after deducting such cost, the land, over which the road had been built, and on which the houses had been erected, would, in case of their removal, be equally (or more) valuable for agricultural purposes, including ploughing and cultivation, and fitting and laying it down to grass, as if it had not thus been changed and built upon, then the laying out and filling up of the road, and removing the soil, for the building of houses, and the erection of houses thereon, did not constitute waste.

The jury were also requested to say, (if they should find that the estate would be of less value for agricultural purposes, supposing the buildings to be all removed,) whether it would, on the whole, be equally or more valuable to the owner of the inheritance, on the hypothesis of the buildings' remaining thereon at the determination of the life estate.

The jury returned a verdict for the defendant, and, on being inquired of, stated that they were of opinion, that the estate would be worth more to the owner of the inheritance, for agricultural purposes, even if the houses were taken off, than if the acts of the defendant, in raising and filling up the road, and digging the soil for building, had not been done.

Verdict to be set aside, and a new trial granted, if any of the foregoing instructions, unfavorable to the plaintiff, were wrong.

*D. Cummins & F. Cummins*, for the plaintiff. The change of meadow into arable land, or of arable land into meadow or pasture, is waste. So of the alteration of the character of land, though it become more valuable by the alteration. The course of husbandry is thereby changed, and also the evidence of the estate. Co. Lit. 53 *b.* Dyer, 37 *a.* 2 Bl. Com. 282. 3 Wooddeson, 28, 29. *Lord Darcy* v.

*Askwith,* Hob. 234.   2 Saund. 259, *note* (11.)   *City of London* v. *Greyme,* Cro. Jac. 181.   *Cole* v. *Greene,* 1 Lev. 309. *Simmons* v. *Norton,* 7 Bing. 640.   *Doe* v. *Jones,* 1 Nev. & Man. 6, and 4 Barn. & Adolph. 126.   This doctrine is fully recognized in *Conner* v. *Shepherd,* 15 Mass. 167.   In the case at bar, the plaintiff suffers damage.   The leaving of a street open, for a long time, may bring into question the title to the land, and expose the plaintiff to injury and loss.   The erection of houses, and the division of the land into small lots, are a damage to the plaintiff.   If the life estate should suddenly terminate, he may be put to great expense and trouble in regaining his rights.

*B. R. Curtis & R. A. Chapman,* for the defendant.   By the lease of the defendant to the plaintiff, the life estate merged in the remainder ; so that if acts of waste have been committed on the Pond Meadow, the plaintiff cannot maintain an action of waste.   Preston's Tracts, 89, 273, 454. No acts of waste have been committed on either of the parcels described in the plaintiff's declaration.   "Waste," says Blackstone, "is a spoil and destruction of the estate, by demolishing not the temporary profits only, but the very substance of the thing."   3 Bl. Com. 223.   See also 3 Dane Ab. 222. 2 Leon. 174, pl. 210, per Windham and Rhodes, Js.   *Harrow School* v. *Alderton,* 2 Bos. & Pul. 86.   *Young* v. *Spencer,* 10 Barn. & Cres. 145.   In England, the law as to waste has changed, in various particulars of its application, in consequence of the changes in agriculture ; though the principles of the law remain unchanged.   Bac. Ab. Waste, C.   In this country, the general principles of waste are recognized, but the application of them has been very different from that of the old English law.   Many things, that are waste in England, are good husbandry here.   See 3 Dane Ab. 219.   *Jackson* v. *Andrew,* 18 Johns. 431.   *Jackson* v. *Brownson,* 7 Johns. 227.   *Winship* v. *Pitts,* 3 Paige, 259.   *Findlay* v. *Smith,* 6 Munf. 134. *Crouch* v. *Puryear,* 1 Rand. 258.   *Ward* v. *Sheppard,* and *Parkins* v. *Coxe,* 2 Hayw. 283, 339.   *Shine* v. *Wilcox,* 1 Dev & Bat. Eq. Rep. 631.   *Owen* v. *Hyde,* 6 Yerg. 334, *Hastings* v *Crunckleton,* 3 Yeates, 261.

The acts done by the defendant, in pursuance of his agreement with the plaintiff, in the lease of July 13th 1839, (without regard to merger,) cannot be treated as waste. A party may waive a forfeiture by waste. *A fortiori*, he may agree beforehand, that certain acts may be done, which otherwise would be waste. The defendant had a right, under the provisions of the lease, to erect buildings and their appendages and the opening of a way is incident thereto.

WILDE, J. This is an action of waste, and the case comes before us on exceptions to the instructions to the jury at the trial. The premises described in the writ were formerly the property of Edward Pynchon, and were devised by him to Susan Pynchon, his wife, so long as she should remain his widow, remainder to the plaintiff. The defendant holds under an assignment from the said Susan.

It was proved at the trial, that the plaintiff had taken of the defendant a lease of part of the premises during the life of the said Susan ; and it was ruled by the court that, as to that part of the premises, the action could not be maintained. That this ruling was correct, cannot, we think, admit of a doubt. By this lease to the plaintiff, he became the owner of the whole estate. The estate for years immediately merged in the remainder in fee ; and the plaintiff entered, as it is understood, before the alleged waste. If, however, the lease had been given after the waste, no action of waste could be maintained after the merger of the estate, and after the entry of the plaintiff under the lease from the defendant.

If it be said that the reservation in the lease to the plaintiff prevented the merger, the answer is, that the reservation did not, and could not, by the well established rules of construction, limit or devest the estate expressly demised to the plaintiff. The defendant only reserved the right to erect buildings on the premises ; but no estate for life or for a term of years is reserved ; and if it had been reserved, it would have been repugnant to the terms of the lease limiting and demising the estate for life to the plaintiff.

As to the stipulation for the payment of rent, we consider

that as a personal covenant of the plaintiff. No right of entry is reserved for the non-payment of rent ; and that covenant can no more prevent a merger than it can prevent the vesting of the estate demised.

As to the alleged acts of waste on the other part of the premises, the plaintiff relied upon sundry facts which are not disputed ; namely, that the defendant had opened a way through the premises from one public highway to another; and that the defendant had subverted the soil, by digging out part of the soil for cellars of houses by him erected ; and that he had ploughed the lands, dug drains, and had drawn in large quantities of earth, thereby raising the land and changing the surface thereof. The defendant introduced evidence to show that these acts of the defendant were beneficial and not prejudicial to the plaintiff, and did not constitute waste. On this evidence the jury were instructed that the opening of the way was not waste ; and that if breaking up meadow land occasionally was a judicious and suitable mode of husbandry, the changing the surface by breaking up and cultivating it, was not waste ; and that the removing the soil for the building of houses, and the erecting them, and digging drains, if the estate on the whole would be equally or more valuable to the owner of the inheritance, would not be waste.

The general rule of law in respect to waste is, that the act must be prejudicial to the inheritance. It is defined by Blackstone, (3 Bl. Com. 223,) to be " a spoil and destruction of the estate, either in houses, woods, or lands." It is true, however, that it has been held in England, that to change the nature of the property by the tenant, although the alteration may be for the greater profit of the lessor, was waste. So in England, if the tenant converts arable land into wood, or *e converso*, or meadow into plough or pasture land, it is waste. Bac. Ab. Waste, C. 1. The reasons given are, that it changes the course of husbandry, and the evidence of the estate. But these reasons are not applicable in this Commonwealth, and consequently such changes here do not constitute

waste, unless such changes are prejudicial to the inheritance So the doctrine is laid down by Mr. Dane, and it is, we think, supported on satisfactory reasons. 3 Dane Ab. 219. When our ancestors emigrated to this country, they brought with them, and were afterwards governed by, the common law of England; excepting, however, such parts as were inapplicable to their new condition. 2 Mass. 534. 8 Pick. 316. That the principle of the common law under consideration was then inapplicable to the condition of the country is obvious, nor has it been applicable at any time since; for it has been the constant usage of our farmers to break up their grass lands for the purpose of raising crops by tillage, and laying them down again to grass, and otherwise to change the use and cultivation of their lands, as occasions have required. A conformity, therefore, to this usage, cannot be deemed waste. Even in England, "if a meadow be sometimes arable, and sometimes meadow, and sometimes pasture, the ploughing of it is not waste." Bac. Ab. Waste, C. 1. Com. Dig. Wast, D. 4. As to the effect of such changes upon the evidence of title to lands, it is evident that it can have none in this State. Our conveyances are very simple. The land conveyed is described by metes and bounds, or by some general and certain description of its limits, without any designation of the kind of land conveyed, whether it be arable land or grass land, wood land or cleared land, pasture or meadow.

As to the other acts complained of, we think they cannot be deemed waste, unless they may be prejudicial to the plaintiff; and that the instructions to the jury, in this respect, were therefore correct. To erect a new house on the land where there was not any before, is not waste. Bac. Ab. Waste, C. 5. So there seems no authority for holding that the opening of a way by the defendant, for his convenience, and draining the land, are acts of waste. And as to raising the land, by carrying thereon quantities of earth, whatever may be law of England, it is not in this Commonwealth waste, unless it may be prejudicial to the plaintiff.

The ancient doctrine of waste, if universally adopted in this country, would greatly impede the progress of improvement, without any compensating benefit.    To be beneficial, therefore, the rules of law must be accommodated to the situation of the country, and the course of affairs here ; as it has been frequently decided.    *Winship* v. *Pitts*, 3 Paige, 259, and other cases cited by the defendant's counsel.

In this country, it is difficult to imagine any exception to the general rule of law, that no act of a tenant will amount to waste, unless it is or may be prejudicial to the inheritance, or to those entitled to the reversion or remainder.

For these reasons, we are of opinion that the instructions to the jury were correct.

*Judgment on the verdict.*