JOSEPH McGILLIVRAY v. DAVID EVANS, CHARLES
BARTLETT, AND ELIZABETH GARRITY.

PARTITION OF WATER.—Water flowing in a ditch and owned by tenants in com-
mon cannot be mechanically partitioned. The only partition which a Court can
make, which will definitely and permanently end disputes of tenants in common
in water used for mining purposes, is to order a sale and a distribution of the pro-
ceeds.

OBJECT OF A PARTITION OF PROPERTY ITSELF.—The object of a partition of the
property itself among tenants in common, is to enable each party to obtain the
title to and the use for all future time, in severalty, of some definite portion of
the property owned in common.

APPEAL from the District Court, Ninth Judicial District,
Trinity County.

The facts are stated in the opinion of the Court.

*George Cadwalader*, for Appellants.

This proceeding is complex in every feature—and the decree
therein, instead of finally adjusting the rights of the parties,
will give rise to greater uncertainty, confusion and litigation
than existed before the attempt of the plaintiff to have set off
to him in severalty his part of an uncertain volume of running
water—which swells and falls with the variations of the sea-
sons, and though in contemplation of law divided into accu-
rate parts, is only so on paper—the stream, after division as
before, being but a single body of water with its irregular flow,
through reaches and bends, over natural and contending with
artificial obstructions which chance or design may place in its
bed.

There may be power to order a sale and declare the respec-
tive interests of the conflicting claimants, but none to order the
division of that which by reason of its absolute indivisibility
must, after a theoretical separation, remain precisely in the
same condition as before, and thereby give rise to the same
litigation which the final decree was designed to end. In the
nature of things and by the ordinary rules of common sense
this must be so.

While we see it possible in some cases, such as where water is used as a motive power, in connection with large mills or manufactories, for a Court of equity, by its decree, to regulate its use, and declare the rights of various parties therein at fixed and stationary points, such as the head gate of a mill or manufactory, the water being the incident, as it were, to the mill property, and there being no common interest in all the property, but only in the use of the water.

In such cases there would seem to be an obvious necessity for the exercise of the power, which is well illustrated in the leading case (cited by opposite counsel) of *Smith* v. *Smith*, 10 Paige, 470.

*W. W. Upton*, for Respondent.

Since the inherent powers of a Court of equity are competent to the disposition of all questions that arise in a case of this kind (Story's Eq. Juris. 654–656 ; *Hanson et al.* v. *Willard*, 3 Fairf. 147), and will afford redress for every substantial injury (*Merced Mining Company* v. *Fremont*, 7 Cal. 325), it may be a question not essential in this case, whether or not the case is within the statute regulating partition of real estate. We think it is.   The tenement is a ditch, and the water running in it ; ownership of the ditch embraces and includes the land on which the ditch is constructed. (Ang. on Watercourses, 159.)   The parties hold as tenants in common, and each has an estate of inheritance.

The right to running water, also, is real estate, and embraces the land covered with water, not only while mingled, but the ground where it is separated, and that over which it afterwards runs and is used.   "The party does not appropriate the water" alone, "but the land covered with water." (*Crandall* v. *Woods*, 8 Cal. 136.)   "It has none of the characteristics of mere personalty," it is "a corporeal right or hereditament." (*Hill* v. *Newman*, 5 Cal. 446.)   And "although the soil may actually belong to the United States, a grant is presumed in favor of the occupant," ownership of *usufruct* interest pre-

sents the question of "title to land." (*Conger* v. *Weaver*, 6 Cal. 556.) And it is real estate within the statute governing partition. (*Hughes* v. *Devlin*, 23 Cal. 501.)

Although the waters of the plaintiff and defendants are mingled together, there is no partnership relation existing between them, as neither has gain or loss in the other's business. (Story on Part. Sec. 3 ; Story on Contracts, Sec. 178.)

Tenants in common are not partners. (8 Greenl. 253 ; 9 Johns. 470 ; 2 Ib. 329 ; 15 Wend. 187 ; 2 Hall, 415 ; Steph. *Nisi Prius*, 2,368.)

There is nothing in the relation of the parties to prevent either party from taking his share of the water from the stream above the ditch, and thus sever the relation without any change of interest in the water, (*Kidd* v. *Laird*, 15 Cal. 161,) or selling his interest, and thus introducing a new party without consent of others.

The case of *Butte Canal Company* v. *Vaughn*, 11 Cal. 149, recognizes the condition and character of separate and distinct interests in running water as it exists, in fact, in our State.


By the Court, Sawyer, J.

This is an action for the partition of the water of a mining ditch, admitted to be owned by the parties as tenants in common. The three defendants are entitled to the first flow of twenty inches when the water is high, which, the Court finds, is to be measured without pressure. But in the summer, when the water is low, they are entitled to the first flow of one fourth of the whole, provided one fourth does not exceed twenty inches. The plaintiff is entitled to two fifths, and the defendants to three fifths of the remainder, after the twenty inches, or the one fourth at low water, has been taken out. The answer alleges, that, as between themselves, the twenty inches is owned jointly by all the defendants, and that the three fifths are owned by two of them only—but the Court does not find how the defendants hold, as between themselves. The defend-

ants appear to use the water for mining purposes, and the
plaintiff formerly used his for irrigating his garden, and for
sale to miners—the parties dividing it among themselves.
Upon the facts found, the Court ordered the water to be
divided, according to the proportions ascertained to be owned
by the plaintiff and defendants respectively, and appointed
three Commissioners to make the division in pursuance of the
order of the Court, and to report at the next term.   Two of
the Commissioners presented a report, in which they say :
" We first, by means of a box and gate, placed in the end of
said ditch where defendants were wont to take out their twenty
inches of water, divided or separated from the main body of
the first flow of the water twenty inches thereof, without
pressure, in the same manner as it was measured when first
sold in 1852, as directed by the Court in said order, so arrang-
ing the gate in the box as to slide up or down, as the quantity
of water in the ditch varies, which said twenty inches of water
we turned out to and set apart for said defendants, which will
flow to them constantly all the year round.   The balance or
remaining portion of said water of said ditch, described in said
commission, we divided at the lower end of said race between
the plaintiff and defendants, giving to the said plaintiff two
fifths of the water, and to the defendants three fifths thereof.
The said division of water was made in the following manner:
After we had separated and set off to the defendants twenty
inches of the first flow of the water (as it run in the ditch)
we partitioned the balance by means of a division box, placed
at the lower end of said ditch, with five equal apertures
arranged side by side on the same level in such manner that
the water of the ditch, whether low or high, will flow out
through said five openings in equal quantities ; three fifths of
said balance of water, after flowing through three of said
openings, falls into a ditch of the defendants and flows off to
them, it being optional with them to keep it separated into
three parts or to mingle it.   The other two fifths of said bal-
ance of water flows through two of said apertures and falls
into a ditch of the plaintiff, and thus flows to him."

The other Commissioner dissented, and made a counter report, in which he maintains that the water is not properly divided; that the defendants do not get their full amount of the first flow by the division made; that it is impracticable to make a just and permanent partition of the waters; and that any such attempted division would prove greatly injurious to the interests of the parties. The Court adopted and confirmed the majority report, and made a final decree in accordance therewith, in which it was " ordered and adjudged that said report stand, and the same is the judgment of the Court in partition to be of perpetual effect between the plaintiff and said defendants," etc.; to all of which proceedings defendants objected, and excepted, and they now appeal from the judgment.

Appellants allege that the Court erred in assuming to make a partition of the water in the mode provided by the judgment. It would, to our minds, be utterly impracticable for the Court to make a mechanical division of the water running in a ditch, owned by tenants in common, and used for mining purposes, in such a manner as to permanently do justice between the parties. The object of a partition of the property itself is to enable each party to obtain the title to, and the use for all future time, in severalty, of some definite portion of the property owned in common, and thereby permanently end all disputes and remove all obstructions to its free enjoyment. In the case of two mills upon a stream comparatively constant in its flow, which are permanently located at a permanent dam upon its banks, and to which a right to the use of the water of the stream for propelling them is appurtenant, and where permanent gates and gauges may be fixed, it is possible, perhaps, to arrange a division of the water in such a manner as to approximately do justice between the parties. The Chancellor so thought in *Smith* v. *Smith*, 10 Paige, 470. But in the case of water conducted in ditches for mining purposes, the circumstances are entirely different. The use of the water is rarely had for any considerable length of time at the same point. When the claim of a miner is

worked out he must remove to another. There is occasion continually to change the point at which he uses the water and at which he takes it from his ditch. Besides, when a given quantity is to be taken out of the first flow of the stream, without pressure, where the amount of water in the ditch is subject to great fluctuation, gates must be arranged so as to increase or diminish the aperture through which the water is discharged, according as the amount of water increases or diminishes, as was actually done in this instance. But the Court cannot say at what point the gate shall stand to-morrow, or next day, or the next—nor can it take upon itself the appointment of an officer, to stand at the gate, and gauge it in accordance with the ever changing current of the stream. An adjustment of the "apparatus" which would make a perfectly fair division to-day, might produce an entirely different result to-morrow. This partition is to be "of perpetual effect," and *to be* " of perpetual effect," it would be necessary to take the water out at that particular point, through the box placed there by order of the Court, by means of which the partition is made, whether the parties can any longer make it available for their mining purposes at that point or not. It is manifest that partitions, made upon this theory, cannot, ordinarily at least, be permanent without working great injury to the parties. In the language of appellants' counsel: " The water to be valuable must follow the mines, and be used at those points where the mining claims are situated, which involves the necessity of shifting the ditch line from place to place, and the construction of extensions and lateral ditches, as new occasions require." The ditch and the right to take the water from the creek above in this case, are still held in common, and the expenses of keeping the ditch in repair must still be a common charge. There is no partition, except of the water. It is manifest that the Court has assumed a duty that is utterly impracticable for it to perform. The Court may determine the rights of the parties, and ascertain and adjudge the amount of interest which each party holds; but it cannot assume to make a mechanical division of a material which, from its

nature and the nature of the uses to which it is applied, is incapable of any permanent division that shall do justice between the parties. The only partition that the Court can make, which will definitely and permanently end the dispute of the parties and do justice between them, is to order a sale and distribute the proceeds.

In this case the Court did not attempt to make a complete partition. It only divided the water between the plaintiff, on one side, and the three defendants, as one party, on the other. The record shows that the three defendants owned the twenty inches jointly, and two of them three fifths of the remainder. The defendants demanded that the twenty inches should also be partitioned among them; but it was not done, and it is obvious that it would be utterly impracticable for the Court to adjust such complicated interest by a single mechanical division by means of boxes, gates and gauges to permanently remain. An attempt to do it would be, not to end, but to encourage and multiply litigation to an unlimited extent.

The necessary facts to enable the Court to make a proper distribution of the proceeds, on a sale, do not appear in the findings, and a new trial will be necessary.

Judgment reversed and a new trial ordered in pursuance of the principles indicated in this opinion.

By the Court, SAWYER, J., on petition for rehearing.

The correctness of our decision is not questioned in the petition for rehearing. A rehearing seems to have been asked on the supposition that the District Court was directed to enter a judgment ordering a sale of the property and division of the proceeds. But such is not the order. The order is: "Judgment reversed and a new trial ordered in pursuance of the principles indicated in this opinion." When the case goes back a new trial will be had. The plaintiff prays for a partition. If a partition is to be had, it can only be made by a sale and a division of the proceeds. Plaintiff now urges that upon the pleadings a partition would not necessarily follow;

that other relief may be had which will accomplish the object of the parties.    These questions do not arise upon this appeal. Upon a new trial the Court will doubtless afford such relief as it judges the parties may be entitled to upon the pleadings and facts established on the trial.    The defendants do not appear to demand affirmative relief, they simply submit to a partition, but insist that they are entitled to a larger share than is accorded to them in the complaint, and that, if a partition is decreed, it should be made according to the interests as claimed in the answer.    If the pleadings do not present the questions which the parties desire to litigate and have determined, in view of the fact that a mechanical division of the water cannot be had, perhaps the suit might be dismissed, and another commenced upon another theory, or parties might arrange to amend.    At all events, when the cause goes back for a new trial, the parties can pursue such course as they may deem their interests to require.    We do not see that a different judgment could be entered upon this record.

A rehearing is denied; but, to guard against misapprehension, the order for judgment is modified so as to read : Judgment reversed and new trial ordered.