## Wilber G. Chapman et al. v. W. F. Epperson Circled Heading Co. et al.

1. WASTE—*What is Not, Under a Reservation in a Conveyance to Another for Life.*—Where a grantor conveys lands to another and reserves to himself a life estate therein, " without liability for the commission of waste on any part of the premises conveyed," he is liable for nothing short of the willful and malicious commission of waste by him.

2. SAME—*What a Tenant for Life is Entitled to—The General Rule.* —An ordinary tenant for life is entitled to cut from the land, timber for his fire wood and for repairs on building and fences, but he is not permitted, as a general rule, to cut and sell timber.

Bill to Restrain Waste.—Appeal from the Circuit Court of Vermilion County; the Hon. FERDINAND BOOKWALTER, Judge, presiding. Heard in this court at the November term, 1901. Affirmed. Opinion filed April 9, 1902.

On April 29, 1898, John W. Goodwine, in consideration of five dollars and natural love and affection, conveyed between 800 and 900 acres of land in Vermilion county to his daughter, Dora Chapman, for life, with remainder to her heirs, reserving to himself a life estate "without liability for the commission of waste on any part of said premises."

On November 26, 1898, in consideration of $3,000, in cash paid, Goodwine entered into a written contract whereby he sold to W. F. Epperson Circled Heading Company all the timber on 260 acres of the land, except such as was under the size of fourteen inches in diameter at the butt, and would make two ties six by eight inches.

On December 12, 1898, Dora Chapman died, leaving as her only heirs at law two minor children, Wilber G. Chapman and Chester H. Chapman, for whom Eli S. Sperry was appointed guardian.

In July, 1899, a dispute having arisen between Goodwine and W. F. Epperson Circled Heading Company as to what timber was covered by the contract, Goodwine contending that timber under size had been cut, a compromise was effected on the 27th of that month whereby the company paid to Goodwine $100 for all timber which had been cut under size, and the contract was so modified as to allow the company to cut all timber that would make merchantable railroad ties, except white and swamp oak measuring fourteen inches at the butt.

On January 24, 1900, the company assigned its contract to one Frank Gill, who continued cutting the timber until June 30, 1900, when Goodwine and Sperry, guardian of the minor children mentioned, filed a bill in the Circuit Court to enjoin him and the company from any further cutting of the timber. In the bill it was alleged that Gill was cutting timber under size and that the cutting and remov-

ing of the timber from the land caused irreparable injury and waste. Both Gill and the company answered, denying the cutting of timber under size and denying that the cutting and removal of timber as being done by Gill amounted to waste. The cause was referred to the master in chancery to take the proofs and report his conclusions upon the facts and the law. The master heard the evidence and reported adversely to the complainants both as to the facts and the law. Exceptions were filed to the report, and during the hearing of them before the court, leave was obtained to file an amended bill. The amended bill was in all essential features like the original except that Goodwine was made a defendant instead of a complainant. The court, upon a hearing, sustained the master and dismissed both the original and amended bills for want of equity.

EVANS & McDOWELL, attorneys for appellants.

REDDEN & RAY and GEORGE T. BUCKINGHAM, attorneys for appellee Gill.

M. M. BACHELDER and O. M. JONES, attorneys for appellee Epperson Circled Heading Company.

KIMBROUGH & MEEKS and WINTER & REARICK, attorneys for appellee Goodwine.

MR. JUSTICE HARKER delivered the opinion of the court.

Under the amended bill appellants sought an accounting for timber which had been cut under the contract of sale made by their grandfather, John W. Goodwine, with the W. F. Epperson Circled Heading Company, and an injunction against further cutting. Their contention is that Goodwine, having a life estate in the land, had no right to sell off the timber. We regard that as the leading question in the case.

The evidence shows that the entire body of land, of which the timber land in question was a part, was deeded by Goodwine as a gift to his daughter and her children. Appellants were but the recipients of her gratuity. The

deed contained the following reservation: "The grantor hereby expressly reserves to himself a life estate in all of said premises, without liability for the commission of waste on any part of said premises." This reservation, together with the facts and circumstances attending Goodwine's management of the land, clearly shows that he intended to reserve to himself the right to control the premises as he pleased and as his own during his lifetime, with the right to sell such timber as he pleased. It is clear to our minds, therefore, that Goodwine is liable to appellants for nothing short of willful and malicious waste.

An ordinary tenant for life is entitled to cut from the land timber for his firewood and for repairs on buildings and fences; but he is not permitted, as a general rule, to cut and sell timber. Where a tenant for life holds an estate "without impeachment of waste," he has greater rights, however. He may cut timber of natural growth and remove it, and in fact do all things consistent with the preservation of the estate. He can not, of course, burn down necessary buildings or destroy productive orchards, for such acts would be wanton and malicious. But he may do any act with reference to the woodland that the owner of the fee might do, being restrained only from the commission of willful and malicious waste. He may thin out the timber of a wood's pasture or cut off all the timber and cultivate it as a field. If the cutting is not wanton or malicious, and does not amount to equitable waste, it can not be restrained by the owner of the fee, even if he sells the timber. (Amer. & Eng. Ency. of Law, Vol. 28, p. 864, 1st Ed.; Stevens v. Rose, 69 Mich. 259; Kent's Com. IV, 78; Co. Litt. 220 a; Tiedeman on Real Prop., Sec. 80.) There is no warrant whatever for saying that the removal of timber from this 260 acres of land in accordance with the contract entered into between Goodwine and the heading company on November 26, 1898, or in accordance with the modification of July 27, 1899, would constitute equitable waste. In fact the evidence in the record tends to show that a removal of part of the timber, such as is contem-

plated by the contract, would render the land more valuable for pasture.

The evidence does not support the contention that timber under size was cut by either the heading company or Gill after the modification of the contract on July 27, 1899. True, several witnesses testified that they saw recently cut stumps under fourteen inches, but they did not testify that the stumps were of white or swamp oak, the kinds prohibited under the modified contract. The evidence also shows that other parties had been cutting timber for fence posts about the same time, and that such posts were made of white oak and swamp oak under fourteen inches in size. Although there was much testimony heard by the master upon this point, it was very loose and unsatisfactory and not such as to support a finding that either Gill or the heading company had cut white oak or swamp oak under size after July 27, 1899.

We think the case was properly decided and the decree will be affirmed.