L. V. HILL et al., Appellants, v. JOHN W. GROUND
et al., Respondents.

Kansas City Court of Appeals, October 2, 1905.

1. **LIFE TENANT:** Reversion: Waste: Common Law: A life
tenant's enjoyment of land is confined to such use as will pre-
serve for the reversionary estate its productive elements, to-
gether with the products of the soil resulting from long periods
of nature's elaboration that enhance the value of the land; and
consumption of things belonging to the inheritance is waste,
save, in America, land may be cleared of timber for agricul-
tural purposes when it appears to be for the benefit of the
land and not to lessen the value of the inheritance.

2. ——: ——: ——: **Condition: Mines.** However, a life tenant's uses are modified by the condition in which he received the land, and if the owner of the fee had opened the mineral veins and extracted ores therefrom for commercial purposes, the life tenant may continue the process, even to the exhaustion of the mine.

3. ——: ——: **Contract: Mines.** Where the life tenant received the land with the mine unopened and thereafter enters into a contract with the reversioner to open the mine and divide the profits, and the mine is opened but not worked and the contract abandoned, the status prior to the contract is restored.

4. **PARTITION: Sale: Life Tenant's Interest: Mines: Statute.** A forty-acre tract was sold in partition bringing $7,000 by reason of the supposed minerals thereunder, which had never been opened for traffic. For other purposes the land was worth $800. *Held*, the money was real property and the life estate was to be calculated on the $800, since the tenant had no interest in the minerals, and the statute of March 8, 1903, does not change the common law.

Appeal from Jasper Circuit Court.—*Hon. Hugh Dabbs,* Judge.

AFFIRMED.

*Thomas & Hackney* for appellant.

(1) The chief value of the land sold being the lead and zinc ore it contained, the life tenant would have the right to mine the same although the same may not have been opened up for mining prior to the commencement of the life estate. Saeger v. McCabe, 92 Mich. 186. (2) Even if it be conceded that the tenant for life can not open up mines where no mines were opened before the commencement of the life estate and that he would be guilty of waste if he opened up mines without the consent of the remainderman, yet, if the real estate can not be partitioned in kind and be sold, the net proceeds to be divided among the respective owners, the net proceeds is the basis upon which the respective interests must be determined and in case of a life tenant his in-

térest must be determined by 'the Northampton life tables. McGillivray v. Evans, 27 Cal. 92; Adams v. Briggs, 7 Cushing 361; Bainbridge on Mines, 155. (3) The defendants, owners of three-fourths of the real estate subject to the life estate of appellant, and the owners of the remaining one-fourth subject to the life estate of appellant, having, after the commencement of the life estate, as shown by the testimony of both defendants, opened up this real estate for mining purposes, leased out lots to miners and sunk shafts to the depth of 135 or 140 feet and developed ore and carried on mining operations with the consent of the life tenant and under an agreement to the effect that the real estate should be devoted to mining purposes and to the extraction of lead ore and zinc ore and other valuable products, the owner of the life estate then had the right to carry on mining operations on said land and to an interest in the minerals in said mine, the value of which said minerals should have been taken into account in ascertaining the value of appellant's life estate. Lenfers v. Henke, 73 Ill. 104; 24 Am. Rep. 163; Priddy v. Griffith, 105 Ill. 560; Went's App., 106 Pa. 301; McClintock v. Dana, 106 Pa. 386; Shoemaker's App., 106 Pa. 392; Elias v. Griffith, L. R. (8 Chancery Div.) 521.

*Howard Gray* for respondents.

(1) The appellants insist that as the chief value of this land consisted in its lead and zinc ore, the life tenant would have the right to mine although the same may not have been opened up for mining prior to the beginning of the life estate, and cite Saeger v. McCabe, 92 Mich. 186. This decision is squarely in conflict with the cases in this State. Proffitt v. Henderson, 29 Mo. 325; Davis v. Clark, 40 Mo. App. 515; R. S. 1899, sec. 4140. (2) The case is also in conflict with the decisions of other States. Hook v. Coal Co., 83 N. Y. 963; Sayers v. Hoskinson, 110 Pa. St. 473; Coal Co. v. Cox, 39 Md. 33;

Gaines v. Min. Co., 33 N. J. Eq. 603; Chapman v. Epperson Co., 101 Ill. App. 161; Bergen & Meehan Co. v. Sears, 67 S. W. 1002; Gerkins v. Salt Co., 39 S. W. 444; Marshal v. Mellon, 179 Pa. St. 371; Marshal v. Mellon, 35 L. R. A., 816; Williamson v. Jones, 27 S. E. 411, 43 W. Va. 562; Tiedeman on Real Property, sec. 75. (3) For their second point, the appellants contend that even though the life tenant has no interest in the minerals, yet if he can get the property sold in partition, he then can get his part of the mineral value. This is not the law. Bond v. Godsey, 39 S. E. 216, 99 Va. 564; Scribner on Dower (2 Ed.), p. 651, secs. 19, 20; Coates v. Cheever, 1 Cow. (N. Y.) 460. (1) The appellants having failed on the theory they had at the time they brought and tried this suit, now seek to change horses in crossing the stream, and contend that the appellant, L. V. Hill, is entitled to a certain part of the mining value because of some agreement by which the land was opened up. It is sufficient answer to this to say that neither the petition or answer claimed any interest of this kind, and is not found in the motion for a new trial as they have at all times contended that the value of the life estate should be based upon the total value of the premises for all purposes.

JOHNSON, J.—Plaintiffs sued for the partition of forty acres of land situated in Jasper county. It is alleged in their petition that plaintiff L. V. Hill is the owner of a life estate in the whole tract during the natural life of Thomas Sears and that the reversion is owned in common by plaintiffs and defendants whose respective interests represented in twentieths are as follows: L. V. Hill two, Howett one, Isaac Hill two and the defendants Ground and Irwin fifteen. Further it is alleged that the character of the land and number of owners make division in kind impracticable.

Defendants in their answer admit that partition in kind cannot be made and among other defenses allege

that the life estate owned by L. V. Hill "is of such a nature that he has no right to remove or has no interest in any minerals under the surface of said land" . . . "that said property is mineral land and that its principal value is on account thereof and that the use that the life tenant has the right to put said land to is of but very small value."

An interlocutory decree was entered finding the interests of the parties as stated in the petition and a sale of the land was ordered. In this decree the determination of the value of the life estate was reserved until after the sale. The land was sold for $7,000.00. Evidence was then heard by the court touching the value of the life estate and these facts were disclosed. Before the beginning of the life term no mining nor prospecting for minerals had been done. After Hill became the owner of the estate of Sears he and the defendants agreed to engage in mining upon the land for lead and zinc ore. Hill was to have one-third and the defendants two-thirds of the profits. A prospect shaft was sunk 135 feet and ore encountered but the defendant Ground testified without contradiction that, "There is no way of determining what the mineral in that ground is worth from anything people know at present time—persons familiar with the ground.

"Q. There is no way of determining what the actual value of the ground is; you cannot tell whether there is a nickel's worth of mineral value in the ground —it is only a supposition? A. No."

The agreement for mining in question contained a stipulation providing for its termination upon the motion of either party by the giving to the other of six months' written notice. It does not appear that any ore was extracted or severed and operations under the contract were abandoned some three years before the trial. The defendants both of whom testified made no claim of value in the land on account of ore in sight but asserted that the land was valuable chiefly because of its location

which indicated that it contained mineral deposits that
could be profitably mined. The market value of the land
for all other purposes was placed at $20 per acre or $800
for the tract. The court in its final decree restricted the
interest of the life tenant to that portion of the proceeds
representing the value of the land for purposes other
than mining. From this judgment plaintiff L. V. Hill
appealed.

At common law the enjoyment of land by a tenant
for life or years is confined to such use thereof as will
preserve for the reversionary estate its productive ele-
ments together with the products of the soil resulting
from long periods of nature's elaboration that enhance
the value of the land. The wealth with which it has been
so enriched is regarded as capital to be profitably em-
ployed by the termor, but the principal must be kept in-
tact for the succesor in estate.   Consumption by the
life tenant of the things belonging to the inheritance is
waste.   This rule of the common law is followed in this
State and is generally recognized.   [Proffitt v. Hender-
son, 29 Mo. 325; Davis v. Clark, 40 Mo. App. 515.]

There is some divergence however in the applica-
tion of the rule.   In England where the presence of tim-
ber upon land adds to its value the tenant may not with-
out waste (subject to his right of estover) remove trees
therefrom while in this country, the right of the tenant
to clear the land of timber and make it fit for agricultu-
ral pursuits has been sustained when the act appeared
to be for the benefit of the land and did not lessen the
value of the inheritance.

The uses the tenant may take of the land in his prof-
itable enjoyment thereof, without being guilty of waste,
depend in a large measure upon the conditions under
which he received it.   Generally speaking it may be said
that it is not waste for the tenant to continue to use the
land as his predecessor in possession invested with the
fee used it, but it is waste for him to consume natural
wealth which until the period of his term had been pre-

served in nature's state by the owners of the fee for the inheritance. . The owner of the fee in possession may determine by his acts the things that shall continue to remain parcels of the inheritance and those that shall become subject to the profitable use. Thus he may abandon the cultivation of the surface and operate a brick yard upon the land and remove its productive soil in the making of brick, thereby destroying its agricultural value, and it would not be waste for the life tenant following him to continue such use, but it would be waste for the tenant to begin the destruction of soil in cultivation in the making of brick.

Considered in the light of these views mineral deposits in land which have been left by the owner of the fee in their natural state without any act on his part evidencing a purpose to apply them to the profitable use must be regarded as a part of the inheritance and cannot be mined by the life tenant, but if the owner of the fee has opened mineral veins and extracted ore therefrom for commercial purposes, the life tenant must be held authorized to continue such operations even to the extent of exhausting the deposits so opened. [Hook v. Garfield Coal Co., 83 N. W. 963; Bond v. Godsey, 99 Va. 564; Coal Co. v. Cox, 39 Md. 33; Gaines v. Mining Co., 33 N. J. Eq. 603; Chapman v. Epperson, 101 Ill. App. 161; Bergen v. Sears, 67 S. W. 1002; Gerkins v. Ky. Salt Co., 39 S. W. 444; Marshall v. Mellon, 179 Pa. St. 371; Tiedeman on Real Property, sec. 75; Washburn on Real Property (6 Ed.), sec. 280; Koen v. Bartlett, 41 W. Va. 559; Adams v. Iron Co., 7 Cush. 361; Elias v. Griffith, L. R. (8 Chancery) 521.]

In the case before us it appears that no mining nor even prospecting work had been done upon the land in question when the life term of Sears began and had the land remained in the condition in which Sears received it the conclusion would be inevitable that as Sears acquired no right to consume the subsurface minerals he

had no interest in that part of the market value of the land based upon their presence real or supposed.

But it is argued by appellant that the effect of the partnership agreement made between Sears' grantee, and the remaindermen for conducting mining operations upon the land changed the status of the mineral from that of a parcel of the inheritance to that of becoming a part of the profitable use. This contention is not sound. Waiving the point that to effect a change so radical in the rights of the parties not only must ore of apparent value be reached, but that some of it must actually be mined; it would be violative of well-established principle to say that either party to that contract could acquire thereunder greater rights than those accorded by the terms of the contract itself. If anything could serve to strengthen the principle referred to it is the facts of this case. Neither the life tenant nor the remaindermen before the contract was made had any right to conduct mining operations upon the land; the former for the reasons shown and the latter for the reason that during the life term—a freehold estate—the remaindermen had no right to enter the land at or below the surface for any purpose. The parties by their contract contemplated and intended that the remaindermen should have present enjoyment of that which they could not use except with the consent of the termor and in consideration of this privilege they bestowed upon the life tenant a part of the thing belonging exclusively to them. Either party could at will terminate the agreement at any time. Appellant in effect says that the life tenant could by ending the contract acquire the exclusive right to extract ore even to the point of exhausting the mine thereby depriving the remaindermen of the whole of their inheritance so far as concerned the mineral deposits. It is more consonant with reason and principle to give effect to the intention of the parties themselves as expressed in the contract than it is to confer upon either by operation of law

rights that could not exist, except by the agreement of both and that evidently were not within the purview of expressed intention. The effect of the abandonment of operations under the contract leaving the mineral resources of the land undisturbed was to restore the status that existed before the contract was made.

As the life tenant therefore with the contract at an end is devoid of right to extract minerals from· the land he is without interest in them or in that part of the value of the land arising from their probable existence. The purchase money derived for the land under these proceedings represents its entire value for all purposes including mining and it was proper for the trial court to determine after hearing evidence the portion thereof in which the life tenant has an interest. The purchase money is real property and the tenant should not be awarded interest upon any part thereof that represents the price of things belonging exclusively to the inheritance. [Bond v. Godsey, supra; Scribner on Dower, 651, secs. 19, 20; Coates v. Cheever, 1 Cow. (N. Y.) 460; McGillivray v. Evans, 27 Cal. 92.]

There is nothing to be found in the act of the Legislature (Session Acts 1903, p. 167), at variance with these views.

The judgment is affirmed. All concur.