Mary E. KNOWLES and Russell Knowles, Plaintiffs-Respondents,

v.

Dale R. MOORE and Margaret Moore, as Trustees, Constituting the Last Board of Directors of Table Rock Construction Co., Inc., and Dale R. Moore, Individually, Defendants-Respondents,

and

Alvin Baker, Defendant-Appellant.

No. 12016.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 5, 1981.

John M. Belisle, J. D. Baker, Belisle & Baker, Osceola, for plaintiffs-respondents.

William C. Crawford, Crandall, Crawford & Crandall, Carthage, for defendant-appellant.

PREWITT, Presiding Judge.

Plaintiffs, the owners of 400 acres of land in Barton County, received a judgment against defendants for damages to the land during the time it was leased to Table Rock Construction Co., Inc. and subleased to defendant-appellant Alvin Baker. Apparently Table Rock Construction Co., Inc. was a corporation which is no longer in existence, and defendants Moore constituted its last officers and board of directors.

Prior to the lease in 1978, the land was described as being "true prairie". It had been used to raise prairie hay for approximately the last fifty years. During that time it had not been cultivated and perhaps never had been. The land was described as "poor" and unfit for tilling because it was rolling and rocky. A witness testified that the soil was "excellent" for grass but not such that he would want "to raise crops on for very long". The lease was in writing but contained no provision regarding the tenant's use of the land. It recited that "Tenant is in the farming business" and that it would "be responsible for any accidents resulting from the farming of this farm". Both defendant Dale R. Moore and his father had previously leased the land and had used it only to raise prairie hay. After entering into a sublease appellant cultivated most of the four hundred acres and planted soybeans and wheat on it. This killed many of the native grasses and plants, so that most of the four hundred acres would never again be "undisturbed true prairie". Defendant Dale R. Moore, in a letter signed by him as "Pres. Table Rock Const. Co., Inc.", informed appellant before appellant began cultivating that "I again want to assure you that I have permission to plow-up the hay land and will protect and hold you harmless in any way in this regard." Plaintiffs' evidence denied that they gave permission to cultivate the land. There was no evidence that they did so.

The trial court's judgment awarded plaintiffs $8,400 damages against defendants Dale R. Moore and Margaret Moore as statutory trustees of Table Rock Construction Co., Inc. and Dale R. Moore, individually, for the loss of "cash crop rent" and $35,000 against all defendants for the "costs of reseeding and restoration of productivity of the land." The judgment also awarded appellant $17,500 and half the court costs on his crossclaim against Dale R. Moore, individually, and Dale R. Moore and Margaret Moore, as statutory trustees, of Table Rock Construction Co., Inc.

Appellant Baker contends here: (1) that there was no evidence to support the trial court's finding that he knew that plaintiffs had not given the lessee authority to cultivate the land; (2) the trial court incorrectly awarded plaintiffs damages of $35,000 because there was no evidence to support the award as the value of the land was not diminished by the cultivation by appellant; (3) the trial court erroneously found that the measure of damage to be applied was the reasonable rental of the grasses destroyed, plus the reasonable cost of reseeding; and (4) the trial court erred in only awarding appellant $17,500 on his crossclaim, instead of $35,000.

We initially consider appellant's first point. It contends that there was no evidence that he knew that plaintiffs had not given Dale R. Moore authority to cultivate the property. There was no direct evidence that he had such knowledge. However, if authority to cultivate was required before doing so, and it did not exist, whether appellant knew it did not exist would make no difference. The evidence is undisputed that

plaintiffs did not give anyone express authority to cultivate.

■ Under the early English common law a tenant of meadowland did not have the right to cultivate it. *Darcy v. Askwith*, Hobart 234, 80 Eng.Rep. 380, (1618); *Duke of St. Albans v. Skipwith*, 8 Beav. 353, 50 Eng.Rep. 139, 140 (1845); *Pynchon v. Stearns*, 52 Mass. (11 Met.) 304, 310 (1846); 49 Am.Jur.2d, Landlord and Tenant, § 263, pp. 276–277. In this country a tenant may cultivate meadowland if it is a reasonable use of the land and not prejudicial to the fee holder. *Pynchon v. Stearns*, supra, at 311; 49 Am.Jur.2d, supra, p. 277. See also *Hill v. Ground*, 114 Mo.App. 80, 89 S.W. 343, 344 (1905); *Davis v. Clark*, 40 Mo.App. 515, 520–521 (1890).

■ Appellant relies in part on a quote from *Mize v. Burnett*, 162 Mo.App. 441, 145 S.W. 150, 151 (1912) stating: "the plowing up of blue grass is not waste, on the authority of *Proffitt v. Henderson*, supra, that 'it is not waste to convert arable land into meadow, or vice versa,' in which case defendant had the right to plow up the blue grass sod in the farm." We believe neither *Proffitt v. Henderson*, 29 Mo. 325, 327 (1860), nor *Mize* are helpful to appellant. They were referring to land fit for tillage. "Arable land" is land fit for plowing or tillage. 6 C.J.S., p. 142; Black's Law Dictionary, p. 95 (5th ed. 1979). Land not suitable for cultivation is not "arable". *McCarter v. Sooy Oyster Co.*, 78 N.J.Law 394, 75 A. 211, 215 (1910). The trial court found that the land was not suitable for tillage and the planting of grain crops. Therefore, absent express permission, the land should not have been cultivated.

■ Appellant also contends that references in the lease that "Tenant is in the farming business" and would be responsible for "accidents resulting from the farming of this farm" indicate that the tenant can do any type of farming. That the parties knew that the premises were going to be used for farming does not establish that any kind of farming was authorized, particularly a kind for which the land was not suited. The land had been used for raising prairie hay and the lessees could have properly continued to use it for that purpose. Point one is denied.

Appellant's second point contends that the judgment against him was erroneous because there was no evidence that the fair market value of the land was diminished by the cultivation. Point three claims that the trial court erroneously determined that the proper measure of damages was the reasonable rental lost plus the cost of reseeding. Both points contend that the proper measure of damages should have been the difference between the fair market value of the land before the cultivation and the fair market value afterwards. Therefore, we consider these points together.

Based upon *Miller v. Sabinske*, 322 S.W.2d 941 (Mo.App.1959); *Beaty v. N. W. Electric Power Cooperative*, 312 S.W.2d 369 (Mo.App.1958); *Couch v. Kansas City Southern Ry. Co.*, 252 Mo. 34, 158 S.W. 347 (1913); and *Crouch v. Kansas City Southern Ry. Co.*, 141 Mo.App. 256, 124 S.W. 1077 (1910), the trial court found the proper measure of damages to be the "reasonable rental of perennial grasses destroyed, plus the reasonable costs of reseeding". Appellant contends that the holding of those cases does not apply here because they did not involve native prairie grasses. Relying on *Mattis v. St. Louis & S. F. Ry. Co.*, 138 Mo.App. 61, 119 S.W. 998 (1909), he contends that proper rule is there stated:

"... for wild grass, commonly known as 'prairie grass', which is not produced from seed sown, and which, when once destroyed, cannot be restored in a season by the agency of man, a different rule necessarily applies, for the destruction of the roots of such production may be an injury to the land itself, and the damage would be the difference in that value before and after the fire."

■ We do not know if seeds to return the land to raising prairie grass were available when *Mattis* was decided. The opinion indicates that man could not restore prairie grassland to what it was before. Here there was evidence that seeds of many of

the plants destroyed were available and reseeding would restore the land to substantially the condition it was before the cultivation. Hay could be cut the year following reseeding, but it would be three years before there would be a "full crop". Because both prairie grass and blue grass may be reseeded by man, we fail to see any reason why the destruction of prairie grass would have a different measure of damages than the destruction of blue grass or other sown grass. Points two and three are denied.

Appellant's fourth point contends that he was entitled on his crossclaim to indemnification for the full amount of plaintiffs' judgment against him. Appellant was assured by Dale R. Moore that Moore had permission to plow-up the hay land and that Moore would protect and hold him harmless. The evidence indicated that appellant relied on both the representation and the agreement to hold him harmless. The use of "in any way" is a strong indication that the parties intended full indemnity. The word "any" is all comprehensive and is the equivalent of the words "every" and "all". *Hamilton Fire Insurance Company v. Cervantes*, 278 S.W.2d 20, 24 (Mo. App.1955). A contract of indemnity is construed to cover all losses, damages, or liabilities which it reasonably appears to have been intended by the parties to cover. 42 C.J.S. Indemnity § 12.a, p. 579. Generally, when liability has accrued on a contract of indemnity the indemnitor is responsible to the indemnitee to the full extent of the loss suffered. 41 Am.Jur.2d, Indemnity, § 35, p. 724. We believe that the parties intended to cover all loss that appellant might suffer as a result of cultivating the land and hold that the trial court was in error in only giving appellant indemnification for 50% of his obligation to plaintiffs under the judgment. By the judgment, the other defendants were also liable to plaintiffs, but appellant is liable for and may have to pay the entire $35,000. Whatever appellant is required to pay, he should recover on the agreement to indemnify him.

The portion of the judgment granting appellant $17,500 on his crossclaim is reversed, and in all other respects the judgment is affirmed. The cause is remanded to the trial court for it to modify the judgment as to appellant's crossclaim so that appellant will be entitled to receive indemnification from Dale R. Moore, individually, and Dale R. Moore and Margaret Moore, as statutory trustees of Table Rock Construction Co., Inc., for the full amount that he may have to pay under the judgment, including court costs.

BILLINGS, J., concurs.

HOGAN, J., disqualified.