GENERAL INSURANCE COMPANY OF
AMERICA, Appellant,

v.

Thomas H. FLEEGER, Appellee.

A. L. BUSBY, Appellant,

v.

GENERAL INSURANCE COMPANY OF
AMERICA, Appellee.

Thomas H. FLEEGER, Appellant,

v.

GENERAL INSURANCE COMPANY OF
AMERICA et al., Appellees.

No. 24766.

United States Court of Appeals
Fifth Circuit.

Feb. 6, 1968.

**160**

Chester G. Ball, Arlington, Tex., Mar-·vin Jones, Brundidge, Fountain, Elliott & Churchill, Dallas, Tex., Harris & Ball, Arlington, Tex. (on appeal), for appellant.

W. S. Barron, Jr., Dallas, Tex., Edward Lester, Little Rock, Ark., for appellees.

Before TUTTLE and GEWIN, Circuit Judges, and HUNTER, District Judge.

EDWIN F. HUNTER, Jr., District Judge:

General Insurance Company of America instituted action to recover on four indemnity agreements executed by Fleeger and Busby, et al.,[1] as indemnitors, to the insurance company, as indemnitee, covering four contractors, to-wit: Wooten Construction Company, Inc., Masterson Construction Company, Inc., Lanham Construction Company, and Tech-Neeks, Inc. The case was tried to a jury upon special interrogatories under Rule 49(a). Judgment was entered upon the answers to the special interrogatories that General Insurance recover nothing as to Fleeger except for the losses sustained in connection with the Tech-Neeks indemnity agreement (and as to it, for only those losses paid on bonds issued before May 1, 1964). Judgment was entered against Busby for the full amount prayed for. Three appeals have been taken: A. L. Busby has appealed from that part of the judgment granting General Insurance full relief; General Insurance from that part of the judgment which denies it the major portion of the relief sought against Fleeger; and Fleeger from that part of the judgment which grants General Insurance partial recovery as against him.

---

1. A. L. Busby includes Busby, J. R. Masterson and Masterson Construction Company, Inc. Masterson Construction Company was one of the contractors and J. R. Masterson, individually, joined Busby and Fleeger on its indemnity agreement. Both the company and Masterson were sued as defendants.

We deal first with the appeal of General Insurance. The judgment of the district court, insofar as it denies recovery against Fleeger on the Wooten, Masterson and Lanham agreements, is sustainable on two separate and independent grounds, each of which, standing alone, is fatal to the insurance company's appeal. First, the jury found separately with reference to Wooten, Masterson and Lanham, that at or prior to the time of the signing of each indemnity agreement, Mayo represented to Fleeger that each contractor has been checked and found to be competent; that such representation was false; that Fleeger relied on such representation; and that such representation operated as a material inducement to Fleeger: that in making such representations, Mayo was acting in the course of his authority from the insurance company.[2] Secondly, Fleeger alleged and secured jury findings that as to each of these three contractors, General Insurance received notice of defaults by such contractors; that notwithstanding such notice, General Insurance continued thereafter to issue bonds for such contractors; that in so doing General Insurance Company increased the risk or prejudiced the rights of Fleeger under the indemnity agreements, and that in so doing, General Insurance did not act in good faith. The jury made additional findings in each instance setting forth precisely the amount in dollars and cents that Fleeger's rights were prejudiced. There is an abundance of proof to sustain these findings. Under Rule 49(a) the trial judge has the responsibility of applying appropriate legal principles to the facts found by the jury. The trial court's application of the law was correct.[3] Accordingly, we uphold that court's release of Fleeger from liability on the Wooten, Masterson and Lanham bonds. What of Fleeger's contention that he should also have been released completely from liability on the Tech-Neeks bonds? This is the subject of Fleeger's appeal.

Fleeger, in his appeal, runs into essentially the same difficulties as General Insurance. The jury found that the insurance company did not make any misrepresentations pertaining to Tech-Neeks. It also found that General Insurance did nothing to materially increase or prejudice Fleeger's rights under the indemnity agreement pertaining to Tech-Neeks. The trial court accordingly entered judgment against Fleeger for those losses sustained in connection with Tech-Neeks, Inc. on all bonds issued before May 1, 1964, which amount was $50,596.-51.[4] Fleeger argues that the facts as to

2. Mayo, at all times relevant, was appellant's local recording agent. He testified that he had authority to bind certain types of risks, to write insurance policies, and held a power of attorney granted to him by General Insurance Company to execute bonds in its behalf. This Court recently had occasion to consider the extent of authority possessed by a local recording agent in Texas, South Falls Corp. v. Kalkstein (5 Cir., 1965), 349 F.2d 378. The broad sweep of the holding there appears from the following quotation: "The evidence establishes that Hadsell was appointed local recording agent for United Benefit on February 7, 1958, under Art. 21.14, Texas Insurance Code, Vernon's Annot. Civil Stats. * * * *The Texas courts have construed this provision and its predecessor as vesting the local recording agent with authority as extensive as that which the company possesses under its charter.* See Aetna Ins. Co. v. Paddock (5 Cir. 1962) 301 F.2d 807, 809; Shaller v. Commercial Standard Ins. Co., 158 Tex. 143, 309 S.W.2d 59, 63–64 (Tex.1958); Home Ins. Co. of New York v. Roberts, 129 Tex. 178, 100 S.W.2d 91 (1937)" * * *.

3. That an indemnitee's reliance on false representations invalidates an indemnity agreement is incontrovertible. 50 Am. Jur. 163, Bell v. Bradshaw (Tex.Civ.App.), 342 S.W.2d 185; Kamp v. Hargis Bldg. Co. (Tex.Civ.App.), 238 S.W.2d 277. It is equally well settled that an act on the part of an indemnitee which materially increases the risk or prejudices the right of the indemnitor will discharge the indemnitor to the extent that he has been damaged as a result of that act. Hiern v. St. Paul-Mercury Indemnity Co., 262 F.2d 526 (5 Cir. 1959).

4. The jury also found that on or about May 1, 1964 the insurance company, acting through its duly authorized agent,

Tech-Neeks were no different from the facts as to the other contractors, and that the jury's finding as to Tech-Neeks should be set aside. There was abundant evidence to support the finding. Fleeger had a 25% interest in Tech-Neeks. He was apprised of its bonding transactions. There is evidence to support a finding that the bonds were issued with his specific knowledge and consent. Here, each contractor was working on a different job. Default by one could not remotely suggest that the other would default simply because their indemnitors were the same. Fleeger was correctly held on the indemnification agreement with respect to Tech-Neeks to the extent of the district court's judgment.

 There remains the appeal of Busby, who urges two bases upon which he seeks to be relieved of liability: (1) the findings of the jury that General Insurance issued bonds after notice of default, thereby materially increasing the risk to Fleeger, inure to the benefit of Busby and constitute a bar to recovery by General Insurance against him as to those bonds; (2) the findings of the jury that General Insurance agreed with Fleeger on May 1, 1964 that it would not thereafter issue bonds covered by his indemnity agreements without securing Fleeger's approval and its subsequent issuance of bonds without such approval constituted a release of Fleeger, and therefore in law a release of Busby for any losses suffered from bonds issued after May 1, 1964. On first blush these arguments appear to have some merit. What dooms them here is that they were not raised at trial as jury issues. Counsel for Busby stated "we have no issues of fact to be submitted to the jury."

Fleeger was exonerated from liability on the Wooten, Masterson and Lanham agreements because the jury found that he was induced to execute same by the fraudulent misrepresentations of the company's agent and that the insurance company, with knowledge of defaults, continued to issue bonds, and by doing so prejudiced the rights of Fleeger in precise amounts. In order for Busby to be relieved of liability on this score, the jury would have had to find that he, too, had been misled or prejudiced by similar action on the part of General Insurance.[5] Busby's second contention involves the jury findings that Mayo agreed with Fleeger on May 1, 1964, that General Insurance would not thereafter issue bonds covered by these agreements without first securing Fleeger's approval. Busby says that when General Insurance did issue such bonds, it constituted a release of Busby on any losses suffered from bonds issued after that date. Had the issues been raised at trial, General Insurance might well have argued in defense that its relationship with Busby was so close that Busby knew of its action vis-a-vis Fleeger, and could hardly claim now that they so prejudiced his interest as to release him from liability. This is not idle conjecture. It is not a phantom possibility. There is indication enough from the record that Busby and General Insurance combined to get Fleeger into these business deals; that Busby was fully aware of what was going on and acquiesced therein. Though this Court does not so decide now, it feels compelled not to decide to the contrary and relieve Busby of liability.

 Under Rule 49(a),[6] it is for the trial court to decide upon the jury's an-

---

agreed with Fleeger that it would not thereafter issue bonds covered by indemnity agreements signed by him without first securing his approval, and that such company did not secure Fleeger's approval for the issuance of any bonds after such date of May 1, 1964.

5. Nowhere in Busby's testimony does he claim to have been misled. The truth was that he had joint venture contracts with all of these contractors. He testi-

fied that when the contractors began to accumulate bills which they were unable to pay that he had immediate knowledge of it. It was Busby who introduced the contractors to Mayo. It was Busby who brought Fleeger into the deal.

6. "Rule 49. Special Verdicts and Interrogatories.

"(a) Special Verdicts. The court may require a jury to return only a special verdict in the form of a special written

swers, what the resulting legal obligation is. When no interrogatory bearing upon a special issue is submitted and none requested, it then becomes the right of the Court to make a finding of fact upon that issue. If the Court fails to do so, it shall be deemed to have made a finding in accord with the judgment it has entered. We consider the judgment as rendered to have resolved these issues against Busby.[7]

Affirmed.

finding upon each issue of act. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.

7. They could hardly have been resolved otherwise.