HOLIDAY INNS, INC., Third Party Defendant-Appellant,

v.

THIRTEEN–FIFTY INVESTMENT CO., Third Party Plaintiff-Respondent,

and

John Bourguignon and Cynthia Bourguignon, Plaintiffs-Respondents.

No. WD 36698.

Missouri Court of Appeals, Western District.

May 20, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 26, 1986.

Application to Transfer Denied Sept. 16, 1986.

BERREY, Judge.

This is an appeal by Holiday Inns, Inc., from a judgment rendered on the verdict in favor of Thirteen-Fifty on a contractual indemnity claim. This court reverses.

On the night of June 27, 1977, John Bourguignon, a Staff Sergeant in the United States Air Force, after having gone to a cocktail party, decided to go swimming in the pool at the Holiday Inn Motel in Warrensburg where he was a guest. He dove off the side of the pool two times without incident. On his third dive he hit his head on the bottom of the pool, on the upslope, and was rendered a permanent quadriplegic. On June 24, 1982, three days before the running of the statute of limitations, John Bourguignon and his wife, Cynthia, filed a petition alleging the owner and operator of the motel, Thirteen-Fifty Investment Company, (hereinafter Thirteen-Fifty) was negligent in the maintenance of the swimming pool. Specifically, it was alleged in paragraph 6 that Thirteen-Fifty "was careless and negligent in the following respect, to wit:

    a. defendant failed to maintain the pool in a safe condition;

    b. the water in the pool was unreasonably dirty and murky;

    c. the pool area and specifically the water in the pool was poorly lighted;

    d. the pool area was not marked with warnings of the dangerous conditions present at the pool;"

Defendant Thirteen-Fifty in its answer and first amended answer denied plaintiffs' allegations and asserted John Bourguignon had been negligent and careless in causing his own injuries.

Thereafter, on July 12, 1983, Thirteen-Fifty filed a third-party petition against Holiday Inns, Inc., and William W. Bond, Jr., and Associates, Inc.,[1] seeking indemnification and/or apportionment for any liabilities to be adjudged against it. The basis of its claim arises from a franchise

Paul H. Niewald, Kansas City, for third party defendant-appellant.

Larry L. McMullen, Kansas City, for third party plaintiff-respondent.

Before LOWENSTEIN, P.J., and TURNAGE and BERREY, JJ.

1. Early in the procedural history Thirteen-Fifty on March 22, 1984, filed a dismissal without prejudice as to third-party defendant, William W. Bond and Associates.

agreement between Holiday Inns of America and Thirteen-Fifty.

The Holiday Inn, including the swimming pool, was constructed in 1968–1969 by Holiday Inns, Inc., Constructions Division, pursuant to a construction contract between Thirteen-Fifty and Holiday Inns, Inc., and Thirteen-Fifty was granted a license to operate as the innkeeper. Holiday Inns, Inc., designated the William W. Bond architectural firm to make the proper plans and specifications.

After the parties had made various procedural motions and engaged in discovery, the court granted the Bourguignons leave to amend their petition which was filed on July 31, 1984. Paragraph 6 of the amended petition is as follows:

That at the aforesaid time and place the Defendant 13–50 was careless and negligent in the following respects, to-wit:

a. That said swimming pool, constructed by Holiday Inns, Inc., Third-Party Defendant herein, was of insufficient depth for diving and as a result the pool was not reasonably safe for diving;

b. That the water in the pool at said time and place was unreasonably dirty, turbid, milky and murky;

c. That the pool area, and specifically the water in the pool, was inadequately and negligently lighted and illuminated for diving;

d. The pool area was not marked with warnings of the correct depth conditions present at the pool; and

e. That the pool was deceptively shallow and constructed and maintained as such and was never inspected by Defendant for the purposes of ascertaining the true depth and accuracy of the markings of said pool.

On August 10, 1984, ten days after plaintiff's first amended petition, John and Cynthia Bourguignon, Thirteen-Fifty, and Thirteen-Fifty's insurer, Employers Mutual Casualty Company (hereinafter Employers Mutual) entered into a settlement agreement "MADE PURSUANT TO SECTION 537.065 OF THE REVISED STATUTES OF MISSOURI." This statute provides that a claimant and a tortfeasor may contract to limit recovery by the claimant to designated assets or an amount covered in the tort-feasor's insurance contract for agreed upon consideration.

Thirteen-Fifty and Employers Mutual stated their intentions in the contract as follows.

Thirteen-Fifty and Employers Mutual, in recognition of their legal liability to John Bourguignon and Cynthia Bourguignon, wish to pay them a sum which constitutes a small portion of their damages as a result of the injuries they have sustained, in consideration for John Bourguignon's and Cynthia Bourguignon's agreement, as allowed by Missouri law, to limit the property subject to execution.

The contract reveals Employers Mutual paid $990,000.00 in consideration "[t]hat in the event of a judgment in favor of John and Cynthia Bourguignon ... for damages for bodily injury ... or for damages for loss of consortium or services sustained ... neither John Bourguignon nor Cynthia Bourguignon ... nor any person, firm or corporation claiming by or through them, will levy execution by garnishment or by any other manner against Employers Mutual or Thirteen Fifty ... except upon the following:

(a) The assets of any other insurer, joint tort-feasor, person, corporation or other entity except Thirteen-Fifty or Employers Mutual.

(b) Account Number *7–7–40–8–1–23* at Citizen's Bank of Warrensburg, and Thirteen-Fifty specifically warrants that this account will contain at all times at least the sum of Ten Thousand and No/100 Dollars ($10,000.00), and at least this sum will remain in said account from the date of this Agreement until all sums to which John Bourguignon and Cynthia Bourguignon have obtained the right by judgment against Thirteen-Fifty have been paid, or until the amount contained in the above account has been levied upon by John Bourguignon or Cynthia

Bourguignon agree to release Thirteen-Fifty from the obligations created in this subparagraph (2)b, whichever shall occur first.

(c) The assets of any other insurer, joint tort-feasor, or any person, corporation, or other entity which has agreed to indemnify or is found to have an obligation to indemnify Thirteen-Fifty or Employers Mutual, or is found to have a legal obligation to contribute in full or in part to any judgment obtained by John Bourguignon and Cynthia Bourguignon against Thirteen-Fifty, or the proceeds which any such insurer, tort-feasor, person, corporation or entity directly or indirectly pays or has paid into the hands of Thirteen-Fifty or Employers Mutual in Reimbursement of any sum paid to John Bourguignon or Cynthia Bourguignon, or both of them."

In essence, the Bourguignons were paid $990,000 by Employers Mutual in exchange for their agreement to a contract which limits their ability to execute against Thirteen-Fifty and Employers Mutual. The Bourguignons, after obtaining a judgment for the damages sustained, may execute only upon a designated bank account containing $10,000 and any amount Thirteen-Fifty collects on its contractual indemnity claim.

The contract also provides that "if a judgment for contractual indemnity is also obtained by Thirteen-Fifty against Holiday Inns, Inc., then all such sums for indemnity greater than the amount of the judgment of plaintiffs against Thirteen-Fifty less the amount paid hereunder shall, regardless of which method is used to accomplish payment, be recovered from Holiday Inns, Inc., by Employers Mutual or Thirteen-Fifty."

After entering into this agreement, Thirteen-Fifty then amended its original third party petition to include the Bourguignons' first amended petition and also pled the existence of the agreement entered into by it and the Bourguignons. Additionally, Thirteen-Fifty reaffirmed its claim for indemnification from Holiday Inns, Inc., for any liabilities adjudged against it. Thirteen-Fifty specifically set forth, in support of its claim, a provision from the construction contract. It provides:

4.18.1 The Contractor shall indemnify and hold harmless the Owner and the Architect and their agents and employees from and against all claims, damages, losses and expenses including attorneys' fees arising out of or resulting from the performance of the Work, provided that any such claim, damage, loss or expense (a) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom, and (b) is caused in whole or in part by any negligent act or omission of the Contractor, any Sub-contractor, anyone directly or indirectly employed by any of them or anyone from whose acts any of them may be liable, regardless of whether or not it is caused in part by a party indemnified hereunder.

The suit eventually went to trial; all issues were determined in one action. The Bourguignons proceeded in their cause to prove damages sustained against Thirteen-Fifty as the issue of liability had already been conceded by Thirteen-Fifty and its insurer. Holiday Inns, Inc., was not a party to this action. Thirteen-Fifty abandoned any claims against Holidays Inns, Inc., for apportionment and stood solely on its contractual indemnity claim. The jury was not allowed to hear any evidence concerning the agreement entered into by plaintiffs and Thirteen-Fifty. After all the evidence was heard, the jury returned verdicts in favor of John Bourguignon for $12,500,000 and Cynthia Bourguignon for $2,000,000 against Thirteen-Fifty. Both verdicts were reduced by 10%, the percentage of fault assessed against John Bourguignon. The jury also returned a verdict in favor of Thirteen-Fifty and against Holiday Inns, Inc., on the contractual indemnity claim in the amount of Thirteen Million Fifty Thousand Dollars ($13,050,000), the amount assessed against Thirteen-Fifty. Holiday Inns, Inc., appeals from this judgment. Thirteen-Fifty does not appeal the verdicts

rendered against it for the Bourguignons. Additional facts will be explored as they become relevant only to those issues needed to be addressed for disposition.

In its agreement with the Bourguignons, Thirteen-Fifty admitted liability to plaintiff leaving only the issue of damages for trial. Whatever the outcome on the damage issue at trial, Thirteen-Fifty framed its own protective shield through its agreement with the Bourguignons and its use of the indemnity clause in the construction contract to limit its out of pocket loss. One of the primary issues in this case is whether Holiday Inns, Inc., is required to satisfy Thirteen-Fifty's liability to plaintiff over and above the settlement amount.

Indemnification exists where a party secures or protects another against hurt, or loss or damage. *Eggers v. Centrifugal and Mechanical Industries, Inc.*, 440 S.W.2d 512, 515 (Mo.App.1969). In the context of the idemnity-contribution dichotomy it has been stated "it is ... appropriate to use the term "indemnity" in referring to a claim for 100% reimbursement ...." Generally, under a contract of indemnity, the indemnitor is liable to the indemnitee to the extent of his loss. *Knowles v. Moore*, 622 S.W.2d 803, 806 (Mo.App.1981). The Restatement of Restitution § 80 notes an indemnitor's reimbursement is limited "to the amount of the [indemnitee's] net outlay properly expended." *See Gatto v. Walgreen Drug Co.*, 61 Ill.2d 513, 337 N.E.2d 23, 29 (1975), *cert. denied*, 425 U.S. 936, 96 S.Ct. 1669, 48 L.Ed.2d 178 (1976).

This court also recognizes that the language of the indemnity agreement may call for a distinction to be made concerning the indemnitor's responsibility. Contracts may call for indemnity against liability or indemnity against loss. *Moberly v. Leonard*, 339 Mo. 791, 99 S.W.2d 58, 63 (1936). The court in *Moberly* crystalized that distinction:

'A promise to indemnify against the existence of a liability is incurred, and the promisee is entitled to recover damages based on the amount of his liability although he has not satisfied it. On the other hand, a promisor who has undertaken merely to indemnify against damage is liable only when actual payment has been made by the promisee, or damage suffered by him; and then only to the extent of such payment or damage.' *Id.*, 99 S.W.2d at 63 (quoting from 3 Williston on Contracts, 2501, § 1409). This distinction becomes irrelevant, however, in view of the agreement made between the Bourguignons and Thirteen-Fifty to use the indemnity provision in the construction contract to reduce Thirteen-Fifty's own net outlay.

Thirteen-Fifty's agreement with the Bourguignons made pursuant to § 537.065, RSMo 1978 permits the plaintiffs to execute upon "the proceeds which any ... tort-feasor ... pays ... into the hands of Thirteen-Fifty ... in reimbursement of any sum paid John Bourguignon or Cynthia Bourguignon, or both of them." According to the respondent, Thirteen-Fifty, through the structuring of the agreement and the favorable verdicts, the indemnification would properly operate as follows. First, as Thirteen-Fifty has paid one million in partial settlement, it will receive that one million under the indemnity agreement from Holiday Inns, Inc. Secondly, plaintiffs, with the unsatisfied judgment of $13,050,000, will execute upon that $1,000,000 paid to Thirteen-Fifty by Holiday Inns, Inc., pursuant to the agreement. Thirteen-Fifty then retrieves another $1,000,000 and the process is repeated until the plaintiffs' $13,050,000 judgment is satisfied. Unfortunately for the Bourguignons, this contrivance breaks down on the last step of the cycle.

As previously mentioned § 537.065, RSMo 1978, allows a tort-feasor and a claimant to contract to limit the recovery to "specific assets listed in the contract and ... any insurer which insures the legal liability of the tort-feasor for such damage...." In *Farmer's Mutual Automobile Insurance Co. v. Drane*, 383 S.W.2d 714, 718 (Mo.1964) the court stated the obvious purpose of the statute is "to provide a method whereby one insurer might

pay, without litigation, the amount agreed upon between it and the claimant." An insurer as a source of recovery does not invariably encompass "the right to indemnification." Contracts of indemnity are not synonymous with contracts of insurance. *Brotherton v. Patterson,* 406 Pa. 400, 178 A.2d 696, 697 (1962). A claimant under the statute looks only to the *insurer of the tort-feasor. Carter v. Aetna Casualty and Surety Co.,* 473 F.2d 1071, 1074 n. 5 (8th Cir.1973). Had the legislature meant to include a contract of indemnification it would have so stated. The legislature is not so careless in its choice of words.

■■■■ The question becomes whether "the proceeds paid in reimbursement" is an asset within the meaning of the statute. The word "assets" has no primary or technical meaning; its definition is determined by the context in which it is used. 6A, C.J.S. Assets p. 575. In this case, the proceeds do not come into existence until after it has been determined Thirteen-Fifty has a right to those proceeds under the contract provision 4.18.1 for indemnification. The potential proceeds cannot be viewed as assets. Any other construction would leave indemnitors defenseless against parties who may similarly settle in the primary action. Furthermore, it would provide incentive for the indemnitee to breach its duty of acting "reasonably under all circumstances so as to protect the indemnitor against liability," *American Export Isbrandtsen Lines, Inc. v. United States,* 390 F.Supp. 63, 68 (S.D.N.Y.1975) and of refraining from compromising any of its rights, particularly in settlement negotiations. *Central National Insurance Co. of Omaha v. Devonshire Co.,* 426 F.Supp. 7, 20 (D.Neb.1976) *rev'd in part on other grounds,* 565 F.2d 490 (8th Cir.1977); *see Gatto v. Walgreen Drug Co., supra.* In the instant case, the abrogation of Thirteen-Fifty's duties toward Holiday Inns, Inc., is seen not only in the agreement's structure but also in the manner in which it sought to accomplish its purpose, i.e., a method to pass-through the damage amount from Holiday Inns to the Bourguignons.

Thirteen-Fifty and its insurer specifically admitted liability in the agreement with the Bourguignons by making references to Holiday Inns, Inc., as the one "who negligently created or caused to be created the dangerous pool"; and who "refuses to acknowledge [its] responsibility." Thirteen-Fifty additionally admitted on the record, although out of the presence of the jury, that its "interests in this case [were] more aligned with the plaintiff[s] than those of the third party defendant." Further, in closing argument before the jury, the attorney for Thirteen-Fifty stated, "under the law of Missouri, because we had a dangerous condition on our premises, namely a swimming pool that was not safe to dive in because of that, because we should have known of it or knew of it, that's true, we are liable under the law to John—Missouri law to John Bourguignon. We can come into court and deny it and try to get out it somehow, or we can come into court and say that's the way it is."

The breach of Thirteen-Fifty's duty toward its indemnitor, Holiday Inns, Inc., is also shored up by the fact Thirteen-Fifty made no attempt to cross-examine plaintiff's expert witness, an economist, who testified to the amount of plaintiff's future damages. Similarly, with regards to evidence concerning alcohol consumption by John Bourguignon which would have the potential effect of reducing the monetary award assessed against Thirteen-Fifty, Thirteen-Fifty's attorney made the following comments in closing argument:

I want to tell you that the issue of intoxication was placed in this case by me, my client. I filed the pleading in this court house some years ago now, that said and alleged that there was evidence that John Bourguignon was intoxicated. There was evidence of that, and you heard it.

You heard Mike Cook, the Thunderbird from Nellis Air Force Base, say that John told him, "I had five to seven drinks. I'm feeling no pain." And Sgt. Cook said he looked as if he was intoxi-

cated. All right. That's why we put that issue in this case, because it belongs here. And you should consider that, and you should determine what importance to give to it, and what percentage of fault that deserves.

But, I must say to you it's curious, and for me, somewhat hard to understand, that the ranking enlisted man, Chief Master Sergeant Dan Newton, who more or less seemed to be in charge of the enlisted men at the party, says pretty much the opposite; that John did not, John had a couple of drinks, as John has admitted. Dan Newton says he was not intoxicated. And you know, there were probably 12 or 16 other airmen out there who may have had an occasion to see John. I think you can probably believe that if any of those airmen saw something in John that looked as if he was intoxicated, Holiday Inn probably would have brought them here.

Thus, the facts in this case warrant the application of the "general rule of law that any act[s] on the part of any indemnitee which materially increases the risk, or prejudices the rights, of the indemnitor, will discharge the indemnitor under the contract of indemnity." *Hiern v. St. Paul-Mercury Indemnity Co.,* 262 F.2d 526, 529 (5th Cir.1959); *see, e.g., American Casualty Co. of Reading, Penn. v. Idaho National Bank,* 328 F.2d 138, 142–3 (9th Cir.1964); *General Insurance Co. of America v. Fleeger,* 389 F.2d 159, 161 (5th Cir.1968); *see also Rochelle Bail Agency, Inc. v. Maryland National Insurance Co.,* 484 F.2d 877, 879 (7th Cir.1973) (Extinguishment of indemnitor's obligation because bondsman failed to maintain supervision over accused and thus breached its duty towards its indemnitor).

Thirteen-Fifty asserts that admitting liability in an agreement made pursuant to § 537.065, RSMo 1978, or admitting liability in court [2] is not objectionable conduct as

seen in *United States Fidelity and Guaranty Co. v. Safeco Insurance Co. of America,* 522 S.W.2d 809, 819 (Mo. banc 1975). In *United States Fidelity and Guaranty Co. v. Safeco Insurance Co. of America, supra,* at 818–19 the defendant repeatedly requested its insurer to assume his defense and the insurer refused which caused it to be bound by the results of the litigation. That case is distinguishable from the case at bar in that Thirteen-Fifty did not request Holiday Inns, Inc., to assume its defense nor did the indemnity provision 4.18.1 of the construction contract require it.

In a similar light, Thirteen-Fifty chides Holiday Inns, Inc., for its dissatisfaction with the Bourguignon verdict because it failed to exercise its right to intervene citing *Alsbach v. Bader,* 616 S.W.2d 147 (Mo. App.1981). The record reveals, however, that Holiday Inns, Inc., cross-examined most, if not all, of the witnesses presented by plaintiff.

In sum, the settlement agreement as structured is not consistent with the purpose of § 537.065.[3] It motivates an indemnitee to compromise the rights of the indemnitor and to align its interests with those of the claimant in a manner which causes the indemnitee to avoid its responsibilities. And here, the failure by Thirteen-Fifty as an indemnitee to carry out those responsibilities toward its indemnitor Holiday Inns, Inc., rose to the level requiring Holiday Inns to be discharged under the indemnity contract.

All other motions are herein denied.

The judgment in favor of Thirteen-Fifty on its indemnity claim is reversed.

All concur.

---

**2.** In *United States Fidelity and Guaranty Co. v. Safeco Insurance Co. of America, supra,* at 819 the defendant also failed to offer evidence in defense of the claim.

**3.** The obvious purpose behind this agreement was to rectify plaintiff's failure to file suit against Holiday Inns before the running of the statute of limitations. It attempts to force Holiday Inns Inc., to make a status change from third-party defendant into "defendant."