**John BOURGUIGNON and Cynthia Bourguignon, Appellants,**

v.

**THIRTEEN–FIFTY INVESTMENT CO., Appellant,**
**and**
**Holiday Inns, Inc., Respondent.**

**No. WD 40145.**

Missouri Court of Appeals,
Western District.

Aug. 30, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 4, 1988.

Application to Transfer Denied Nov. 15, 1988.

John C. Milholland, Harrisonville, Max W. Foust, Kansas City, for appellants John and Cynthia Bourguignon.

Larry L. McMullen, Kansas City, for appellant Thirteen–Fifty Inv. Co.

Kevin E. Glynn, Kansas City, for respondent.

Before COVINGTON, P.J., and NUGENT and GAITAN, JJ.

GAITAN, Judge.

This is the second action filed by plaintiffs, John and Cynthia Bourguignon, involving John Bourguignon's accident at a swimming pool in Warrensburg, Missouri on June 27, 1977. This Court decided the first action in *Holiday Inns, Inc. v. Thirteen–Fifty Investment Co.*, 714 S.W.2d 597 (Mo.App.1986), and reversed Thirteen–Fifty's judgment in indemnity. This second action arises out of the same events, parties and issues as the first. However, in this second action the Bourguignons seek to execute against Holiday Inns on an equitable creditor's bill theory and employ a legal theory of noncontractual indemnity which was intentionally abandoned in the first action by Thirteen–Fifty. The trial court dismissed the Bourguignon's Second Amended Petition and Thirteen–Fifty's First Amended Crossclaim in the second action. We affirm.

STATEMENT OF FACTS

A. *First Action*

Both actions arose out of an accident in which John Bourguignon sustained injuries on June 27, 1977, at a swimming pool in Warrensburg, Missouri. On June 24, 1982, three days before the expiration of the statute of limitations, § 516.120(1), RSMo 1952, John and Cynthia Bourguignon filed a petition in the first action only against Thirteen–Fifty. They alleged negligence in

the operation and maintenance of the swimming pool.

Thirteen–Fifty initially filed an Answer and First Amended Answer denying the Bourguignons' allegations and asserting contributory negligence against John Bourguignon. Additionally, Thirteen–Fifty filed a Third Party Petition against Holiday Inns on July 12, 1983, seeking noncontractual indemnity and/or apportionment of fault under several theories.

The trial court granted the Bourguignons leave to file their First Amended Petition against Thirteen–Fifty on July 31, 1984, over the objections of Holiday Inns. Paragraph 6 of the First Amended Petition added allegations of negligence against Thirteen–Fifty for the construction activities of Holiday Inns. They alleged that the agreement was to limit recovery as to Thirteen–Fifty in accordance with § 537.065, RSMo 1978. On August 10, 1984, ten days after the Bourguignons filed their First Amended Petition, the Bourguignons, Thirteen–Fifty and Thirteen–Fifty's insurer, Employers Mutual Casualty Company, executed a settlement agreement.

Under this agreement, the Bourguignons were paid $990,000 by Employers Mutual in exchange for their agreement to limit execution against Thirteen–Fifty and Employers Mutual. In the agreement, Thirteen–Fifty admitted liability for the construction activities of Holiday Inns only. The agreement also provided that if a judgment for contractual indemnity was obtained by Thirteen–Fifty against Holiday Inns, then all sums for indemnity over the amount of the judgment of the Bourguignons against Thirteen–Fifty would be passed to the Bourguignons, less the amount paid to the Bourguignons under the agreement.

Seven days after entering into this agreement, Thirteen–Fifty amended its Third Party Petition to incorporate the Bourguignons' First Amended Petition, including the allegations of negligence in construction by Holiday Inns. Thirteen–Fifty also amended to specifically designate a contractual provision in support of its indemnity claim against Holiday Inns.

At the trial, Thirteen–Fifty voluntarily abandoned its noncontractual indemnity claims and all other claims against Holiday Inns, except for its contractual indemnity claim. The Bourguignons attempted to prove damages against Thirteen–Fifty for the construction activities of Holiday Inns, as liability had been conceded by Thirteen–Fifty for the construction activities of Holiday Inns in the agreement. Over the objections of Holiday Inns, the jury was not allowed to hear any evidence concerning the agreement entered into between the Bourguignons and Thirteen–Fifty. Nor was any evidence of contributory negligence by John Bourguignon presented.

This court held that Thirteen–Fifty breached its duties to its indemnitor, Holiday Inns, by actively helping the Bourguignons prove liability against Holiday Inns while Thirteen–Fifty represented to the jury that it was contesting the case. Further, at the trial of the first action, Thirteen–Fifty's counsel made no attempt to cross-examine plaintiffs' expert economist, and in the closing argument, Thirteen–Fifty's counsel admitted liability for having a dangerous swimming pool on its premises and argued against John Bourguignon's contributory negligence. Other examples of the combined efforts of the Bourguignons and Thirteen–Fifty at the trial of the first action against Holiday Inns were cited by this Court. These efforts resulted in an adverse ruling on Thirteen–Fifty's third party action.

This Court held that due to the prejudicial conduct of Thirteen–Fifty, combined with the Bourguignons, Holiday Inns would be discharged from any obligations in indemnity. As a consequence, we reversed the jury verdict against Holiday Inns without remanding for trial. The Supreme Court denied the Bourguignons' Petition for a Writ of Prohibition and also denied the applications for transfer filed by the Bourguignons and Thirteen–Fifty. That judgment thereafter became final.

B. *Second Action [WD No. 40145 (Consolidated with WD No. 40170)]*

The Bourguignons filed a second action on August 27, 1985, while the first action

was on appeal, in an attempt to execute on Thirteen–Fifty's judgment in contractual indemnity against Holiday Inns on an equitable creditor's bill theory. However, neither Thirteen–Fifty nor the Bourguignons had a judgment against Holiday Inns. Holiday Inns filed a Motion to Dismiss the Bourguignons' Petition in the second action on September 17, 1985. A hearing was held on Holiday Inns' Motion to Dismiss on September 23, 1985. However, the court made no ruling on the merits, because it found that the service of process on Holiday Inns was not properly certified. In its answers in the second action, Thirteen–Fifty admitted all of the allegations of the Bourguignons' First and Second Amended Petitions.

Thirteen–Fifty filed a Crossclaim and First Amended Crossclaim against Holiday Inns in the second action. Thirteen–Fifty alleged noncontractual indemnity against Holiday Inns; a theory which was pled by the Bourguignons in their First and Second Amended Petitions in the second action. Thirteen–Fifty had alleged noncontractual indemnity against Holiday Inns in its Third Party Petition in the first action before abandoning that allegation at the trial of the first action.

Holiday Inns filed motions to dismiss the Bourguignons' First and Second Amended Petitions and Thirteen Fifty's Crossclaim and First Amended Crossclaim in the second action. Holiday Inns alleged, *inter alia,* that the matters raised by the Bourguignons and Thirteen–Fifty in this second action were barred by the doctrines of res judicata and collateral estoppel, and that no judgment against Holiday Inns existed to execute against.

The trial court heard oral arguments on Holiday Inns' motions to dismiss on October 29, 1987. No other motions were taken up on that date. Again, Thirteen–Fifty aligned itself with the Bourguignons against Holiday Inns.

In its Order of November 20, 1987, the trial court granted Holiday Inns' motions to dismiss the Bourguignons' Second Amended Petition and Thirteen–Fifty's First Amended Crossclaim in the second action. The court held:

> The Court finds and holds that whether Holiday Inns' motions are characterized as motions to dismiss or, as plaintiffs urge, motions for summary judgment, plaintiffs' amended petition and Thirteen–Fifty's amended crossclaim are dismissed on the basis that by the ruling of the Missouri Court of Appeals in *Holiday Inns, [Inc.] vs. Thirteen–Fifty Investment Company and John Bourguignon and Cynthia Bourguignon,* 714 S.W.2d 597 (Mo.App.1986), they are now estopped from asserting further rights to collect plaintiffs' judgment against Holiday Inns and that there is no judgment upon which execution can issue in favor of plaintiffs against Holiday Inns.

Both the Bourguignons and Thirteen–Fifty appeal that judgment.

While at first glance this case seems to be fairly complex, it may be resolved on a relatively simple basis. The Bourguignons' Second Amended Petition in the second action sought an equitable creditor's bill which requires the existence of a judgment. In *General Grocer Co. v. Ahlemeier,* 627 S.W.2d 61 (Mo.App.1981), the court held that "[w]hen a creditor seeks to maintain a creditor's bill, he is required to first reduce his claim to a judgment before he seeks relief in equity." *Id.* at 64. Since this Court reversed Thirteen–Fifty's judgment in contractual indemnity in the first action, there was no judgment against Holiday Inns.

It is clear from the argument of the Bourguignons that they are attempting to step into the shoes of Thirteen–Fifty. This, they believe they are entitled to do because of the judgment which followed their settlement agreement. They perceive that beyond the $990,000 to which Thirteen–Fifty and the Bourguignons agreed, the Bourguignons have a right to any chose in action as an asset of Thirteen–Fifty. The chose in action that they believe they are entitled to is the claim against Holiday Inns that Thirteen–Fifty would be

entitled to pursue for noncontractual indemnity.

The doctrines of res judicata and collateral estoppel require dismissal when a party tries to relitigate an action involving the same events, parties, and issues as in a previously decided action. This is true notwithstanding the party's attempt to pin a different label on its legal theories in the second lawsuit. *Siesta Manor, Inc. v. Community Federal Savings & Loan Ass'n.*, 716 S.W.2d 835 (Mo.App.1986); *Dreckshage v. Community Federal Savings & Loan Ass'n.*, 641 S.W.2d 831 (Mo. App.1982).

Both actions by the Bourguignons involve the accident of John Bourguignon in the swimming pool in Warrensburg on June 27, 1977, and the potential responsibility of John Bourguignon, Thirteen–Fifty and Holiday Inns for his injuries and his wife's derivative claims. The Bourguignons and Thirteen–Fifty have merely framed their pleadings in this second action around legal theories which were available to them at the time of the first action. As a matter of fact, as previously stated, Thirteen–Fifty initially alleged noncontractual indemnity and tort claims against Holiday Inns in the first action, but they intentionally and strategically abandoned all claims except contractual indemnity in that first action. All of the facts relied upon by the Bourguignons and Thirteen–Fifty in support of their present tort, fraud, and noncontractual indemnity claims were known during discovery and before the trial of the first action.

Thirteen–Fifty and the Bourguignons now erroneously argue that Thirteen–Fifty misconceived its contractual indemnity remedy in the first action, and, therefore, brought an "imaginary" or "mistaken" remedy by pursuing the contractual indemnity. They take this position because of the finding of this Court in disposing of the first action. They apparently conclude that we held that Thirteen–Fifty never had a remedy of contractual indemnity. However, this Court held in *Holiday Inns, Inc. v. Thirteen–Fifty Investment Co.*, 714 S.W.2d 597 (Mo.App.1986):

Thus, the facts in this case warrant the application of the "general rule of law that any act[s] on the part of any indemnitee which materially increases the risk, or prejudices the rights, of the indemnitor, will discharge the indemnitor under the contract of indemnity."

*Id.* at 603. This Court went on to state that the failure of Thirteen–Fifty as an indemnitee to carry out those responsibilities toward its indemnitor, Holiday Inns, rose to the level of requiring Holiday Inns to be discharged under the indemnitor contract.

Contrary to the position of both the Bourguignons and Thirteen–Fifty, we construe this to mean that Thirteen–Fifty did, in fact, initially have the remedy of contractual indemnity to pursue against Holiday Inns, but forfeited that right by its conduct. That conduct was not limited to the execution of the settlement agreement, *see Holiday Inns, Inc. v. Thirteen–Fifty Investment Co.*, 714 S.W.2d at 602–03, but also included conduct in direct examination and cross-examination of its witnesses, and Thirteen–Fifty's confession of liability for Holiday Inns. The structure of the settlement was merely a method to pass damages to Holiday Inn; an attempt to create an asset to justify the use of § 537.065, RSMo 1978. As we previously stated in *Holiday Inns v. Thirteen–Fifty, supra*, at 603, "the settlement agreement as structured is not consistent with the purpose of § 537.065."

In defense of its position, the Bourguignons have argued that *Pemberton v. Ladue Realty and Construction Co.*, 359 Mo. 907, 224 S.W.2d 383 (1949), applies. In *Pemberton*, the plaintiff alleged that he had not been paid for services rendered to a partnership, submitted his action for damages on a quantum meruit theory and obtained a verdict and judgment in his favor. The Court of Appeals held that, as a matter of law, the plaintiff improperly submitted the case on the quantum meruit theory, which was not a viable remedy because he had a proper cause of action for a breach of a formal partnership agreement. The Supreme Court reversed by drawing a

distinction between the situation in which a party proceeds on a "mistaken" or "imaginary" remedy out of ignorance about his proper remedy, and the situation in which a party knowingly elects one of two viable remedies. That Court held that there can be no election of remedies unless two or more inconsistent remedies exist, as opposed to the pursuit of an imaginary or mistaken remedy. This principle was also stated by the Court in *Hollipeter v. Stuyvesant Insurance Co.*, 523 S.W.2d 595, 598 (Mo.App.1975).

The Supreme Court in *Davis v. Hauschild*, 243 S.W.2d 956, 959–60 (Mo.1951), held that if a party pursues one of two consistent remedies and obtains a satisfaction of his claim, he is barred from pursuing the other remedy. Missouri law is well settled that a party may not pursue another remedy in this situation regardless of whether the judgment has been for or against the electing party. *King v. Guy*, 297 S.W.2d 617, 622 (Mo.App.1957); *Stambaugh v. Wedlan*, 371 S.W.2d 361, 363 (Mo. App.1963).

Thirteen–Fifty is attempting to follow the forbidden course condemned by the courts in *Hollipeter, Pemberton,* and *Davis.* Thirteen–Fifty initially alleged noncontractual indemnity and several other remedies in the first action, but voluntarily abandoned all but contractual indemnity as part of its strategic efforts to aid the Bourguignons in the first action pursuant to the agreement. Having pursued contractual indemnity to judgment in the first action, Thirteen–Fifty cannot bring a second action under another theory. This case does not invoke the imaginary or mistaken remedy exception to the election of remedies doctrine.

The Bourguignons and Thirteen–Fifty attempt to argue that because of the decision of this Court in the first action, Thirteen–Fifty pursued an imaginary or mistaken remedy. That is not the case here. This Court did not state that it was reversing Thirteen–Fifty's verdict against Holiday Inns due to any feeling by the Court that Thirteen–Fifty's claim was imaginary or mistaken. Instead, this Court held that the conduct of Thirteen–Fifty in the first action under its agreement with the Bourguignons and at trial was so prejudicial and contrary to the purpose of the Missouri law that Holiday Inns was thereby discharged from its duty to indemnify under the contract. In none of the cases cited by the Bourguignons or Thirteen–Fifty did the parties have an absolute pre-existing right to their allegedly mistaken theory. These parties did have the right; however, that right was forfeited by their prejudicial conduct.

The Bourguignons argue that contractual indemnity and noncontractual indemnity are not inconsistent, thus negating the bar of the election of remedies doctrine. We disagree with this position. We find that the relationship of the parties, due to the prejudicial settlement agreement, led Thirteen–Fifty to voluntarily elect contractual indemnity as its sole remedy and to abandon noncontractual indemnity. We can only guess at what their reasons could have been.

Here, we find that because the claims of noncontractual indemnity and contractual indemnity were used as strategic devices by Thirteen–Fifty in the first action, Thirteen–Fifty's election of one remedy and abandonment of the other should be binding on Thirteen–Fifty. As Thirteen–Fifty has taken one remedy to judgment and lost, they should not be allowed to follow that action with an alternative theory of recovery. Once again, it should be stated that Thirteen–Fifty did have the remedy of contractual indemnity, but through its course of prejudicial conduct, it forfeited that remedy.

The judgment of the trial court is affirmed.

All concur.