**James Thomas MAJOR, Plaintiff–Appellant/Cross–Respondent,**

**v.**

**FRONTENAC INDUSTRIES, INC., Third Party Plaintiff/Appellant/Cross–Respondent,**

**v.**

**M.S. CHURCHMAN CO., INC., Third Party Defendant/Respondent/Cross–Appellant.**

No. 65867.

Missouri Court of Appeals, Eastern District, Division Four.

May 9, 1995.

**896**

Newton M. McCoy, Milton L. Schwartz, Robert Herman, Schwartz, Herman & Davidson, St. Louis, for appellant.

Samuel B. Murphy, Jr., Clayton, Mark G. Arnold, Joseph P. Conran, St. Louis, for respondent.

AHRENS, Presiding Judge.

In this products liability action, plaintiff James Major obtained a jury verdict against the seller of the product, Frontenac Industries, Inc., and the seller prevailed on a third party claim for indemnity against the manufacturer, M.S. Churchman Co., Inc. Prior to trial, plaintiff and seller entered into a settlement agreement pursuant to § 537.065 RSMo 1994. After post-trial motions, the trial court amended the judgment reducing the amount of plaintiff's recovery and of Frontenac's recovery on its cross-claim from $455,000.00 to $51,000.00. Plaintiff and Frontenac appeal the judgment and Churchman cross-appeals the denial of its motion for directed verdict. We affirm.

Plaintiff was seriously injured at work in October, 1984, when he fell from a "high horse" elevated work platform manufactured by Churchman and sold by Frontenac to plaintiff's employer. Plaintiff filed suit against Frontenac, Churchman and its last directors.[1] Churchman was an Indiana corporation which was dissolved in November,

1984. Frontenac filed a cross claim for indemnity against Churchman.

Prior to trial, plaintiff, Frontenac and Frontenac's insurer entered into a written settlement agreement. In the agreement, Frontenac admitted it sold or leased the platform manufactured by Churchman and that the platform was "defective, dangerous and the cause of plaintiff's damages." Pursuant to the agreement, Frontenac's insurer paid $50,000.00 to plaintiff. Plaintiff agreed under § 537.065 not to levy execution against Frontenac to collect any judgment, except: (1) an additional $1,000.00 under the insurance coverage; and, (2) the full amount of any settlement or judgment against Frontenac, but only to the extent that a settlement or judgment for indemnity, contribution or apportionment of fault was entered in favor of Frontenac against Churchman, and was collected. The agreement also permitted Frontenac's insurer to recover a maximum of $10,000.00 attorneys fees incurred by it as a result of its agreement to remain in the lawsuit and pursue the claims against Churchman.

Prior to trial, Churchman unsuccessfully sought to limit plaintiff from introducing evidence of damages greater than $51,000.00. However, on Churchman's motion, the parties were realigned and the trial court allowed Churchman the three peremptory strikes of the defendants, and also allowed Churchman time for opening statement and closing argument equal to the combined time of plaintiff and Frontenac.

At trial, plaintiff's expert, Dr. Jerina, and Frontenac's expert, Dr. Kelsey, testified that the design of the cage on the hoist was defective and unreasonably dangerous. The jury returned a verdict of $455,000.00 in favor of plaintiff and against Frontenac, and in favor of Frontenac on its third party claim against Churchman for indemnity in the same amount. The trial court entered a judgment in favor of plaintiff and against Churchman for $455,000.00.[2] Churchman

---

1. Churchman and the directors in their capacity as trustees were dismissed. Later, the trial court granted summary judgment to the directors as individuals.

2. The trial court's original judgment did not conform to the verdicts, in that it awarded plaintiff judgment directly against Churchman. Plaintiff

filed a motion for judgment notwithstanding the verdict, or, in the alternative, to amend the judgment. Churchman claimed that Frontenac waived its right to indemnity by assisting plaintiff in proving the product was defective, and that Frontenac's third party petition did not state a cause of action for more than the $51,000 Frontenac actually paid to plaintiff. The trial court granted Churchman's motion and entered a judgment for plaintiff against Frontenac in the amount of $51,000.00, and a judgment for the same amount in favor of Frontenac against Churchman. All parties appealed.

Plaintiff and Frontenac[3] contend the agreement was a proper "Mary Carter" settlement[4] under *Carter v. Tom's Truck Repair, Inc.*, 857 S.W.2d 172 (Mo. banc 1993), and that the trial court's action in reducing the verdicts was based on an erroneous construction of § 537.065 based on *Holiday Inns, Inc. v. Thirteen–Fifty Invest. Co.*, 714 S.W.2d 597 (Mo.App.1986).

■ Under Rule 75.01, the trial court retains inherent power to amend the judgment, limited only by a finding of good cause. *Love v. Park Lane Medical Center*, 737 S.W.2d 720, 723 (Mo. banc 1987). Our review is whether the trial court had good cause for amending the judgment, or otherwise stated, whether the trial court could apply and rely upon *Holiday Inns* in reducing the verdicts. *See id.*

Churchman claims the settlement agreement does not permit plaintiff to collect more than $51,000.00 from Frontenac, in that a seller's right to indemnification from a manufacturer is an indemnification against loss, which is limited to the amount paid out.

■ "Generally, under a contract of indemnity, the indemnitor is liable to the indemnitee to the extent of his loss." *Holiday Inns*, 714 S.W.2d at 601 (*citing Knowles v. Moore*, 622 S.W.2d 803, 806 (Mo.App.1981)).

An indemnitor's reimbursement is limited to the indemnitee's "net outlay properly expended." *Id.*, quoting Restatement of Restitution § 80 (1937). The Restatement of Restitution adopts the view that the rules are the same "whether the duty arose from a contract, from a quasi-contractual situation, or from a tort." Restatement of Restitution, Introductory Note to Title C at 385. Restatement § 86 articulates the rule: "A person who has discharged a tort claim to which he and another were subject is entitled to indemnity or contribution from the other in accordance with the rules stated in §§ 76–85...." The Restatement thus applies the "net outlay properly expended" approach to both contractual and noncontractual indemnity. In keeping with the Restatement approach, we see no principled reason why the Restatement § 80 rule approved in *Holiday Inns* for contractual indemnification should not also apply to a claim for noncontractual indemnification by a seller against a manufacturer in a products liability case. *Holiday Inns*, 714 S.W.2d at 601.

Moreover, the distinction between indemnification against loss and indemnification against liability becomes irrelevant where liability has been extinguished and payment made. *Kracman v. Ozark Elec. Coop., Inc.*, 816 S.W.2d 688, 691 (Mo.App.1991) (*citing Holiday Inns*, 714 S.W.2d at 601). The settlement agreement by its terms provided that the Agreement was not a release of any party and that neither Frontenac nor Churchman was released from any liability. However, Frontenac admitted in the agreement that for purposes of this proceeding, the product which Churchman manufactured and Frontenac sold was defective, dangerous and the cause of plaintiff's damages. Further, it agreed to make the $50,000.00 payment on the execution of the settlement agreement. Plaintiff agreed that the total

---

sought recovery against Frontenac, not Churchman. However, the judgment was amended.

**3.** Frontenac adopted the argument portion of plaintiff's brief on appeal in its entirety.

**4.** The term "Mary Carter" resulted from *Booth v. Mary Carter Paint Co.*, 202 So.2d 8 (Fla.App. 1967). Mary Carter agreements refer to a wide

variety of settlement arrangements which occur in multiparty litigation when fewer than all defendants settle with the plaintiffs. Our Supreme Court outlined in *Carter v. Tom's Truck Repair, Inc.*, 857 S.W.2d 172 (Mo. banc 1993), the features of typical Mary Carter agreements, the public policy considerations behind such agreements, and discussed solutions to some of the problems posed by them. *Id.* at 175–180.

amount that could be collected from Frontenac and its insurer would be limited to an additional $1,000.00 and the full amount of any settlement or judgment against Frontenac to the extent that a settlement or judgment for indemnity, contribution or apportionment of fault was entered in favor of Frontenac and against Churchman and collected. Under these circumstances, we believe the liability of Frontenac was effectively extinguished and the "payment made" insofar as Frontenac was concerned. Frontenac was, in the words of its counsel in closing argument, a "conduit." As a result of the settlement agreement, we believe the measure of damages on Frontenac's noncontractual indemnity claim was limited to the amount paid. *See Holiday Inns,* 714 S.W.2d at 601.

Plaintiff argues that the contractual indemnity involved in *Holiday Inns* is distinguishable from the noncontractual indemnity claim of seller against manufacturer. We disagree. As noted above, the principles which gave rise to the rules of indemnity in joint tortfeasor situations are the same, and do not justify a different result in noncontractual as opposed to contractual indemnity cases.

Plaintiff also contends that the holding in *Holiday Inns* has been implicitly overruled by *Carter v. Tom's Truck Repair, Inc.,* 857 S.W.2d 172 (Mo. banc 1993), where the validity of "Mary Carter" type agreements was first addressed by our Supreme Court. The holding in *Carter* is not in conflict with that in *Holiday Inns.* As *Holiday Inns* is not a judicial disapproval of Mary Carter agreements, it has not been overruled by *Carter.* Rather, *Holiday Inns* is a case where a Mary Carter agreement did "distort the adversarial process and ... undermine the right to a fair trial." *Carter,* 857 S.W.2d at 175–76.

We hold that the trial court properly reduced Frontenac's verdict and judgment against Churchman to $51,000.00, the amount of plaintiff's judgment against Frontenac.

■ We next consider Churchman's cross appeal. In its first point, Churchman claims the trial court erred in denying Churchman's motion for a directed verdict, because Frontenac discharged any claim for indemnification from Churchman, in that Frontenac actively assisted plaintiff in obtaining a verdict against Frontenac. Churchman contends the active assistance included an admission that the high horse was "defective, dangerous and the cause of plaintiff's injuries" in the settlement agreement, and the introduction of defective design theories in cross-examination of plaintiff's expert and in direct examination of Churchman's expert. Churchman further submits that Frontenac's assistance to plaintiff continued on appeal, where Frontenac adopted the plaintiff's brief and asked this court to increase the judgment against itself.

Churchman argues that this conduct discharges an indemnification obligation, citing *Holiday Inns. Holiday Inns* has some similarities to the present case. As in that case the purpose of the settlement agreement here was to pass-through the damage amount from Churchman through Frontenac to the plaintiff. *See Holiday Inns,* 714 S.W.2d at 602. In addition, portions of the transcript included in the record on appeal reflect that Frontenac did not aggressively attempt to exonerate itself of liability and attempted to show that the product was defectively designed. *See id.*

However, there are significant differences between *Holiday Inns* and this case. In *Holiday Inns,* the indemnitee and its insurer specifically admitted liability in the settlement agreement, and left only the issue of damages for trial. *Id.* at 601. Here, Frontenac admitted in the agreement that the product was defective, dangerous and the cause of plaintiff's damages. However, Frontenac specifically denied liability, and the issues of both liability and damages were submitted to the jury. The indemnitee's attorney acknowledged in closing argument before the jury in *Holiday Inns* that it knew or should have known of the dangerous condition of its premises and was liable to the plaintiff. *Id.* at 602. Counsel further stated, "We can come into court and deny it and try to get out of it somehow, or we can come into court and say that's the way it is." *Id.* at 602. The indemnitee in *Holiday Inns* made no attempt to cross-examine the plaintiffs' expert witness, an economist, concerning dam-

ages. *Id.* Also, the indemnitee's attorney commented to the jury in closing argument about witnesses who said one plaintiff was not intoxicated at the time of the accident, when that plaintiff's alcohol consumption would have the potential effect of reducing damages. *Id.* at 602–03.

Significantly, the indemnitor was not a party to plaintiffs' action against the indemnitee in *Holiday Inns,* and the jury was not allowed to hear any evidence concerning the settlement agreement. *Id.* at 600. Here Churchman was a party, and the trial court ordered that portions of the settlement agreement could be disclosed to the jury at the option of Churchman. Churchman chose not to ask for disclosure. On appeal, Churchman argues that it chose not to advise the jury of the settlement agreement because the agreement explicitly conceded that the high horse was defective. Further, Churchman contends disclosure would have given Frontenac the opportunity to make the argument found prejudicial in *Holiday Inns,* that "[w]e have done the right thing and admitted our liability; Churchman should do the same." Here the trial court aligned Frontenac with plaintiff for purposes of number of peremptory strikes, and time for opening statements and closing argument. As recognized in *Carter,* the "surest cure for the ill effects of a Mary Carter agreement is disclosure of its terms to the court and to the jury." *Carter,* 857 S.W.2d at 178. Churchman's concerns might have been alleviated had the basic terms of the settlement agreement been disclosed to the jury, with the portions which admitted liability covered up, and with the suggested trial court instruction that the agreement has no bearing on the issue of the parties' respective liability. *Id.*

The *Holiday Inns* court stated the facts warranted application of the "general rule of law that any act[s] on the part of any indemnitee which materially increases the risk, or prejudices the rights, of the indemnitor, will discharge the indemnitor under the contract of indemnity." *Holiday Inns,* 714 S.W.2d at 603. Although we share some of the concerns raised by Churchman regarding the potential prejudicial effects of the agreement here, we cannot conclude from the partial transcript before us, and under all the circumstances present here, that the acts of Frontenac rose to the level which establishes prejudice under the *Carter* analysis, or which requires that Churchman be discharged from its obligation of indemnity under *Holiday Inns.* Point denied.

■ In Churchman's second point on appeal, it contends that the trial court erred in denying Churchman's motion for directed verdict, because Frontenac's third party petition failed to state a claim, in that it affirmatively pleaded only Churchman had any liability to plaintiff. We disagree.

■ A petition will be found sufficient if the allegations of the petition, accorded a reasonable and fair intendment, state a claim which can call for the invocation of principles of substantive law which may entitle the pleader to relief. *Erslon v. Vee–Jay Cement Contracting Co.,* 728 S.W.2d 711, 712 (Mo. App.1987).

Churchman relies on *Stephenson v. McClure,* 606 S.W.2d 208, 213 (Mo.App.1980), for the proposition that Frontenac's petition fails to state a claim because it failed to plead that it was liable for the injury to plaintiff. The court in *Stephenson* held that the cross-claimant in that case failed to state a claim because the closest approach to an inference of the cross-claimant's liability in the petition was "the conclusory statement and prayer that the [cross-claimant] was entitled to contribution for all or part of the amount paid in settlement" of his claim with the injured party. *Id.*

Unlike *Stephenson* however, we find that Frontenac's petition avers more than just conclusory statements. In its third party petition, Frontenac pleaded that it sold or leased the high horse to plaintiff's employer. Further, in paragraph eight, Frontenac pleaded that the high horse was defective, unsafe and dangerous for its intended uses and purposes. Although Frontenac pleaded that it neither knew nor had reason to know that the high horse was defective, it pleaded that in the event it was found liable, Frontenac was entitled to indemnity or contribution from Churchman. Granting all reasonable

inferences, Frontenac does allege its liability to plaintiff. Point denied.

The judgment of the trial court is affirmed.

SIMON, J., concurs.

KAROHL, J., concurs in result only.